**AMERICAN TRUCKING
ASSOCIATIONS,
INC., et al.**

v.

**SECRETARY OF STATE, et al.**

Supreme Judicial Court of Maine.

Argued March 18, 1991.
Decided June 17, 1991.

John M.R. Patterson, Bernstein, Shur, Sawyer & Nelson, Portland, and Robert Digges, Jr. (orally), Alexandria, Va., for plaintiffs.

Michael Carpenter, Atty. Gen. and William R. Stokes (orally), Asst. Atty. Gen., Augusta, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

ROBERTS, Justice.

The State, through several officials, appeals a summary judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) holding that a flat license fee of $25 per truck for transporting hazardous materials imposed by 29 M.R.S.A. § 246–D (Supp.1990) violates the commerce clause of the Constitution of the United States. Plaintiffs, American Trucking Associations, Inc. and TNT Red Star Express, Inc. (American), cross appeal challenging the denial of attorney fees under 42 U.S.C. § 1988 (1980). We affirm the judgment as

to the invalidity of the license fee, but vacate the denial of attorney fees.

## I.

By P.L.1989, ch. 845, the Legislature repealed 29 M.R.S.A. §§ 246–B & 246–C and enacted section 246–D, which created a hazardous material transportation license requirement for all trucks designated by 49 C.F.R. § 177.823 as carrying hazardous materials.[1] Section 246–D(3) & (5) required payment of a flat tariff of $25 per truck for a one-year permit and $15 per truck for a five-day trip permit. For applications made after December 31, the statute allowed a ½ year permit to be issued for $12.50. The hazardous material fee proceeds collected pursuant to this statute were to be apportioned 65% to the Maine Hazardous Waste Fund, 15% to the Secretary of State for administrative costs, 10% to the Department of Public Safety for costs related to vehicle inspection and enforcement and 10% to the State Emergency Response Commission for hazardous materials training of local and state officials.

The Legislature provided that section 246–D would become effective on July 1, 1990. In April, 1990, American filed a five-count complaint for injunctive and declaratory relief in the Superior Court. In May, 1990, the court established an escrow fund administrated by the State Treasurer to segregate monies paid pursuant to section 246–D and permit refunds in the event American's challenge prevailed. On June 29, 1990, the court entered a partial summary judgment on count one of the complaint declaring the hazardous materials fee violative of the commerce clause, denying injunctive relief but continuing the escrow account, and denying American's claims for relief under 42 U.S.C. § 1983 and for attorney fees under 42 U.S.C. § 1988. In addition, the court directed the entry of a final judgment on count one pursuant to M.R.Civ.P. 54(b).

## II.

In arguing that section 246–D does not violate the commerce clause, the State first argues that Maine's Hazardous Materials Transport License Fee is a "Constitutionally Permissible Regulatory License Fee." According to the State, we recognized a difference between a constitutionally impermissible tax and a constitutionally permissible fee in *Board of Overseers of the Bar v. Lee*, 422 A.2d 998 (Me.1980). The State further argues that *American Trucking Association v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), which was relied on heavily by the Superior Court, prohibits only flat taxes that are designed to raise general revenue to pay for the use of the roads and not "fees" such as those upheld in *Lee*.

*Lee*, however, did not implicate the commerce clause. In *Lee*, the plaintiff challenged the registration fee imposed on attorneys by the Supreme Judicial Court on the ground that it violated constitutional provisions restricting the power to tax to the Legislature. In upholding the Court's power to impose a fee on attorneys, we distinguished the license fee power from the taxing power, noting that "license fees are part of a regulatory program and are intended to cover costs of administering such a program under the police power of government." *Lee*, 422 A.2d at 1004. *Lee*, however, dealt with the distribution of power between the Court and the Legislature and not with the distribution of power between the states and the federal government. Thus *Lee* has little bearing on the issues before us.

Moreover, the U.S. Supreme Court's opinion in *Scheiner* clearly elevates substance over form. According to the Court, it will not uphold a "flat tax merely because the particular formula by which its charges are reckoned extends the same nominal privilege to interstate commerce that it extends to in-state activities." *Scheiner*, 483 U.S. at 296, 107 S.Ct. at 2847. According to the Court, "[s]uch for-

---

**1.** Section 246–D(2) specified certain exceptions that included: vehicles owned or operated by the Federal Government, farming vehicles; emergency vehicles; DEP vehicles; and vehicles used exclusively in the transportation of oil as defined in 38 M.R.S.A. § 542(6).

malism 'merely obscures the question whether the tax produces a forbidden effect.'" *Id.* quoting *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 281, 97 S.Ct. 1076, 1080, 51 L.Ed.2d 326 (1977). On this basis, it would seem that a tariff such as the one imposed here is forbidden if it produces the prohibited discriminatory effects on interstate commerce whether designated as a "fee" or a general revenue "tax."

The State also contends that a "fee" such as the one prescribed by section 246–D does not discriminate against interstate commerce because, unlike highway use taxes, it is not apportionable to miles travelled in Maine. According to the State, "whether a vehicle has a hazardous materials accident or other incident in Maine and what local and State officials must do in the event of such an accident has very little to do with the number of miles a vehicle may have travelled in this state." The State further argues that the Superior Court erred in failing to take into account the holdings of two cases which it contends support its proposition that similar unapportioned flat taxes are constitutionally permissible, *Portland Pipeline Corp. v. Environmental Improvement Commission,* 307 A.2d 1 (Me.1973) and *New Hampshire Motor Transport Association v. Flynn,* 751 F.2d 43 (1st Cir.1984).

The State's reliance on *Portland Pipeline* is unconvincing due to a crucial factual difference between that case and the case at bar. While the State currently argues in favor of a flat fee, *Portland Pipeline* upheld an *apportioned* license fee allocated at one-half cent per barrel. Statements in *Portland Pipeline* regarding unapportioned fees must be regarded as dicta.

*Flynn,* on the other hand, held that a flat hazardous materials license fee, identical to the one currently at issue, was constitution-

al under the Supreme Court's rationale set forth in *Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972).[2] *Evansville–Vanderburgh* held that a one-dollar-per-passenger fee was constitutional, despite the fact that the vast majority of those taxed were involved in interstate flights. According to the Court:

> so long as the toll is based on some fair approximation of use or privilege ... and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of the state facilities by individual users.

*Id.* at 716–17, 92 S.Ct. at 1355. The Court in *Evansville–Vanderburgh* thus emphasized that the "objective of having interstate commerce bear a *fair share* of the costs to the States" was "constitutionally permissible," even if accomplished by a flat fee. *Id.* at 722, 92 S.Ct. at 1358 (emphasis added). In *Flynn,* the First Circuit applied this holding to a flat fee for hazardous materials carriers and found such a fee permissible because of the "relationship between the *amount* the fees raise and the *amount* the state likely spends." *Flynn,* 751 F.2d at 49 (emphasis in original).

*Scheiner,* however, supercedes *Flynn* and *Evansville–Vanderburgh.* In *Scheiner,* the Supreme Court held that unapportioned flat taxes penalize travel within the free trade area among the states and thus violate the commerce clause. *American Trucking Associations v. Smith,* — U.S. —, 110 S.Ct. 2323, 110 L.Ed.2d 148, 156 (1990). Applying the "internal consistency test" set forth in *Armco Inc. v. Hardesty,* 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81 L.Ed.2d 540 (1984),[3] and the proportionality test restated in *Evansville–Vanderburgh,* the Court in

---

**2.** *Portland Pipeline* was also premised upon the holding in *Evansville–Vanderburgh.*

**3.** According to the "internal consistency test," the Constitution is not violated if a tariff imposed on interstate commerce will not "penalize some travel" and "'if applied by every jurisdic-

tion [would cause no] impermissible interference with free trade.'" *Scheiner,* 483 U.S. at 284, 107 S.Ct. at 2840 (quoting *Armco,* 467 U.S. at 644, 104 S.Ct. at 2623 (1984)). The key to this test is whether the tariff could cause economic discrimination between interstate and intrastate carriers if it were applied by every state.

*Scheiner* found that a flat marker fee and a flat axle tax assessed by Pennsylvania on each truck traveling though the state (whether registered there or not) violated the commerce clause of the U.S. Constitution.[4]

According to *Scheiner*, the marker fee and axle tax enacted by Pennsylvania were "wholly unlike" the user fees it upheld in *Evansville–Vanderburgh* and distinguishable from those fees in two ways:

> First, the amount of Pennsylvania's marker and axle taxes owed by a trucker does not vary directly with miles traveled or with some other proxy for value obtained from the state....

> Second, highway use taxes can be imposed by other states.

> And because [they] operate[ ] in other States there is a danger—and not a fanciful danger—that the interstate carrier will be subject to the privilege taxes of several States, even though his entire use of the highways is not significantly greater than that of intrastate operators who are subject to only one privilege tax.

*Scheiner*, 483 U.S. at 292, 107 S.Ct. at 2845 (quoting *Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 557, 70 S.Ct. 806, 814, 94 L.Ed. 1053 (1950) (Frankfurter, J., dissenting)). This emphasis on proportionality and discriminatory effect appears to be the Court's strongest statement to date that flat taxes are constitutionally suspect. According to the Court, "imposition of the flat taxes for a privilege that is several times more valuable to a local business than to its out-of-state competitors is unquestionably discriminatory and thus offends the commerce clause." *Id.* at 296, 107 S.Ct. at 2847. As a result, the flat-tax advocated by the State in the instant case must be analyzed for discriminatory effect.

█ The State's argument that the flat hazardous materials fee set forth in section 246–D is not discriminatory is unconvincing for two reasons. First, if each state imposed such a fee, a truck traveling 100,000 miles interstate could conceivably pay 49 times more in hazardous waste tariffs than a truck that traveled 100,000 miles strictly within the state. This would clearly violate the "internal consistency test", which forbids tariffs that would interfere with free trade by penalizing some travel. *Armco*, 467 U.S. at 644, 104 S.Ct. at 2623. Second, considering the actuarial considerations any state must take into account in preparing itself for emergencies, we find counterintuitive the State's argument that it does not take miles traveled, and thus time on the roads, into consideration in determining the required amount of preparedness. Our finding is supported by the very language of this statute which clearly evidences such actuarial considerations by charging significantly less for six-months and five-day permits.

The State further protests that the hazardous waste tariff should be considered constitutional because the fee does not even cover the cost of the program and a perfectly apportioned program would likely cost interstate trucking concerns more. In light of *Scheiner* this argument is also untenable. Even if the State picks up the majority of the cost of this program, in-state trucking concerns will be favored more than their interstate competitors. As shown above, the *effect* of favoring in-state carriers over interstate carriers is strictly forbidden by the Commerce Clause, even if interstate commerce is not penalized but merely less favored. *Scheiner*, 483 U.S. at 282, 107 S.Ct. at 2839.

Moreover, although it may be true that factors other than miles traveled add to the cost of maintaining the clean-up program, *Scheiner* held the state must apportion the costs of the benefit received unless "administrative difficulties make collection of more finely calibrated user charges impracticable." *Id.* at 297, 107 S.Ct. at 2847. Under this strict standard, the burden is on the states to establish that "collection of more finely calibrated user charges" is

---

4. The marker fee and the axle tax were imposed by the state of Pennsylvania on all trucks, "whether registered in Pennsylvania or elsewhere," that traveled over 2000 miles per year in the state. The statute charged trucks that traveled less the same fee minus a "rebate" which was determined by multiplying the fee by the number of miles actually driven divided by 2000.

"impracticable." The State had the burden in the summary judgment proceeding of establishing the impracticability of such calibration. It did not meet this burden.

The only evidence presented by the State on this matter was the affidavit of David Sait who stated that:

> [t]he state ... has to be prepared to respond when and if an accident occurs. In my opinion, it is virtually impossible to develop a model which would accurately predict the likelihood of risk of an accident in such a way that one could apportion a licensing fee on the basis of predicted risk.

The State produced absolutely no evidence, however, that the tax cannot be apportioned in a manner that would *better* approximate the benefit to each carrier than its current flat license fee. American, on the other hand, presented evidence that while all states have some type of program to regulate the transportation of hazardous materials and provide for clean-up in the event of actual discharge, only Maine funds any part of its program via a flat charge.[5] It therefore does not seem that the mere assertion by one of the State's affiants that "it is virtually impossible to develop a model which would accurately predict the likelihood of risk" meets the State's burden of showing that "more finely calibrated user charges" are "impracticable." *Id.*

### IV.

■ The State also contends that, even if we find section 246–D an unconstitutional burden on interstate commerce, it "is still entitled to that portion of the fee which represents the actual cost of administering and implementing the issuance of cab cards and maintaining records of licenses." We disagree. To allow the State to retain the administrative portion of the fee would place us in the position of implementing a license fee without any demonstrated legislative intent to create such a program absent a hazardous materials tariff. In light of the fundamental canon of construction that courts construe statutes to best effectuate legislative intent, we should not presume an unexpressed legislative intent by severing one section of this statute from its

unconstitutional remainder. *See State v. Edward C.*, 531 A.2d 672 (Me.1987).

### V.

The State contends that, although American's claim for attorney fees was properly raised before the trial court, it cannot be raised on cross-appeal because American itself submitted conclusions of law contrary to its own position. We disagree. American expressly recognized that the court was bound to follow our precedent in *Private Truck Council v. Secretary of State*, 503 A.2d 214 (Me.1986), holding that section 1988 claims could not be based on the commerce clause. Moreover, there is no question that the issue was raised and preserved since American explicitly claimed the right to relief under section 1983 at the end of each count in the complaint. It would seem that this was more than "a sufficient basis in the record to alert the court and ... opposing part[ies] to the existence of that issue." *Chasse v. Mazerolle*, 580 A.2d 155, 156 (Me.1990).

■ As the Supreme Court has recently held that section 1988 attorney fees may be awarded to plaintiffs alleging a denial of rights under the commerce clause, *Dennis v. Higgins*, —— U.S. ——, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) the contrary holding in *Private Truck Council* no longer stands as the governing law. As a result, we vacate the denial of the plaintiffs' claim for attorney fees and remand for an award consistent with the opinion herein.

The entry is:

Judgment declaring 29 M.R.S.A. § 246–D unconstitutional affirmed.

Judgment denying plaintiffs attorney fees pursuant to 42 U.S.C. § 1988 vacated.

Remanded for an award of attorney fees consistent with the opinion herein.

All concurring.

---

**5.** New Hampshire has repealed the flat fee at issue in *Flynn.*