AMERICAN TRUCKING ASSOCIATIONS, INC., Groendyke
Transport, Inc., National Tank Truck Carriers, Inc.,
and TNT Holland Motor Express, Inc., on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellants,

v.

The STATE of Wisconsin, James E. Doyle, the Attorney
General of the State of Wisconsin, Charles H.
Thompson, Secretary of the Department of
Transportation; State Emergency Response Board,
Robert W. Link, Tariq Akmut, Edward W. Mishefske,
Gloria G. Steffen, Jay G. Kopplin, Craig Olson,
Thomas N. Anderson, Caryl E. Terrell, William
Singletary, David Woodbury, Dean R. McKenzie,
Lewis B. Harned, James Barrett and Joseph E.
Tregoning, Defendants-Respondents.†

Court of Appeals

*No. 95–1714. Oral argument March 14, 1996.—Decided
October 17, 1996.*

(Also reported in 556 N.W.2d 761.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Daniel Barney* and *Robert Digges, Jr.* of *ATA Litigation Center* of Alexandria, VA; *Andrew L. Frey* and *Charles Rothfeld* of *Mayer, Brown & Platt* of Washington, D.C.; and *Ann Ustad Smith* and *Randall J. Ney* of *Michael, Best & Friedrich* of Madison.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Peter C. Anderson*, asst. attorney general.

Before Dykman, P.J., and Paul C. Gartzke and Robert D. Sundby, Reserve Judges.

SUNDBY, Reserve Judge.   In this appeal, we hold that the Hazardous Materials Transportation Registration Fee (HazMat fee) imposed by the State Emergency Response Board (Board) from July 1, 1993 to June 30, 1995, on persons offering or transporting hazardous materials in commerce violated the Commerce Clause of the United States Constitution, Article 7, Section 8.

By § 166.20(7g)(a), STATS., the legislature required the Board to establish, by rule, registration fees to be paid annually to the Department of Transportation by persons required to file hazardous materials transportation registration statements with the federal department of transportation under 49 U.S.C. Appendix § 1805(c). 1991 Wis. Act 104, § 13. The Board established such fees effective July 1, 1993. WIS. ADM. CODE § SERB 4.03(2)(a)-(e) (June 1993).[1] SERB 4.03(1) imposed a registration fee on any person who "offers or transports in commerce": (a) radioactive material; (b) explosive material; (c) material extremely toxic by inhalation; (d) hazardous material in a bulk package; and (e) bulk packaging of hazardous material requiring placarding under 49 C.F.R. § 172.500. For each activity engaged in, the transporter or offeror paid an annual fee of $400. SERB 4 fees were imposed on a per company, rather than a per vehicle, basis. The fees generated were used to partially fund the cost of state and local response to emergencies resulting from the accidental release of hazardous materials.

When the Board adopted SERB 4, it anticipated that a new fee structure would be developed as experience in administering the HazMat fee was gained and additional information and data were collected.[2] The Board ultimately adopted revised fees

[1] WISCONSIN ADM. CODE ch. SERB 4 (June 1993) was renamed ch. ERB 4 pursuant to § 13.93(2m)(b)7, STATS., in September 1994. Chapter ERB 4 (September 1994) (Note). Chapter ERB 4 as it existed on November 30, 1995, was repealed and a new ch. ERB 4 was created effective December 1, 1995. Chapter ERB 4 (November 1995) (Note).

[2] Affidavit of David Woodbury, Immediate Response Coordinator, Department of Natural Resources, Bureau of Law Enforcement.

to go into effect December 1, 1995. WIS. ADM. CODE ERB 4 Note (Nov. 1995).[3] However, the legislature amended § 166.20(7g)(b), STATS., to direct that the HazMat fees "be the amount of the fees established in s. ERB 4.03(2) Wis. adm. code as shown on June 30, 1995." 1995 Wis. Act 113, § 107b. The amendment took effect on December 21, 1995. 1995 Wis. Act 113, § 9400.

Because plaintiffs appeal from the judgment entered March 20, 1995, we are limited in our review to that judgment and the issues arising thereunder. However, because we conclude that the HazMat fee which is the subject of the declaratory judgment violates the Commerce Clause of the United States

---

[3] By 1993 Wis. Act 253 the legislature continued the HazMat fees, but required the fees to be paid into the transportation fund, with the programs formerly supported by those fees to be funded from the transportation fund. Fiscal Estimate, March 14, 1995, included in Materials submitted to the President of the Senate by the chair of SERB, June 23, 1995, under Clearinghouse Rule 95-051 (hereafter SERB Materials). The Fiscal Estimate states: "The revised rule includes a proposed fee structure which assesses fees in a more equitable fashion based on activities of participation, mileage and volume." *Id.* The Final Regulatory Flexibility Analysis states that Clearinghouse Rule 95-051 is the result of the direction of the trial court in this case "that efforts to develop a fee structure which adequately reflects hazards presented should continue." SERB Materials.

SERB based the proposed new fee structure on activities of participation, with a supplemental fee for those activities designated by the United States Department of Transportation as being significantly more serious hazards. *Id.* "Furthermore, a fee would be assessed on transporters based on the number of hazardous material miles traveled in or through Wisconsin and the volume of hazardous material transported in or through Wisconsin." *Id.*

Constitution, Article VII, Section 8, we need not address plaintiffs' other issues.

We reverse the declaratory judgment and remand the cause to the trial court to enter judgment for the plaintiffs on their cross-motion for summary judgment.[4]

## I.

### MAY WE REVIEW SERB 4 UNDER THE "DORMANT" COMMERCE CLAUSE?

We first address the State's claim that we are not free to review SERB 4's HazMat fee under the dormant Commerce Clause. The Commerce Clause provides:

> The Congress shall have the power . . . [t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes.

U.S. CONST. art. I, § 8, cl. 3.

The Commerce Clause is described as "dormant" because it may not be invoked to permit the courts to review state taxes or regulations authorized by Congress. In *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 154-55 (1982), the Court explained:

---

[4] When confronted with cross-motions for summary judgment, the reviewing court must rule on each party's motion on an individual basis. *City of Edgerton v. General Cas. Co.*, 172 Wis. 2d 518, 529, 493 N.W.2d 768, 772 (Ct. App. 1992), *rev'd in part on other grounds*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994). Each motion must be denied if material factual issues exist as to the motion. *Id.* (citing 10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2720 (2d ed. 1983); *Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis. 2d 593, 595 n.1, 407 N.W.2d 873, 875 n.1 (1987); *Grotelueschen v. American Family Ins. Co.*, 171 Wis. 2d 437, 492 N.W.2d 131 (1992) (Abrahamson, J., dissenting)).

> [W]e only engage in this [Commerce Clause] review when Congress has not acted or purported to act. Once Congress acts, courts are not free to review state taxes or other regulations under the dormant Commerce Clause. When Congress has struck the balance it deems appropriate, the courts are no longer needed to prevent States from burdening commerce, and it matters not that the courts would invalidate the state tax or regulation under the Commerce Clause in the absence of congressional action. Courts are final arbiters under the Commerce Clause only when Congress has not acted.

(Citations omitted.)

The State argues that Congress has struck the balance it deems appropriate in 49 U.S.C. § 5125(g)(1), which provides:

> A State, political subdivision of a State, or Indian tribe may impose a fee related to transporting hazardous material only if the fee is fair and used for a purpose related to transporting hazardous material, including enforcement and planning, developing, and maintaining a capability for emergency response.

We disagree that by this enactment Congress has "struck the balance it deems appropriate." Congress has not determined what fee is fair for a license or permit to transport hazardous material; nor has it delegated to the states the authority to determine what fee is "fair." Congress first addressed the problem of uniformity of state motor carrier transportation of hazardous materials November 16, 1990, when the Secretary of Transportation established a working group for the purpose of "determining whether or not to limit the filing of any State registration and permit

forms and collection of fees therefor to the State in which a person resides or has its principal place of business." 49 U.S.C. app. § 1819(a)(2). Congress directed the secretary to issue regulations recommended in the report of the working group to be transmitted to the secretary not later than thirty-six months after November 16, 1990. 49 U.S.C. app. § 1819(c) and (d). However, Congress precluded the secretary from issuing regulations defining or limiting the fees which may be imposed or collected by any state. Title 49 U.S.C. app. § 1819(d)(3) provides in part: "Regulations issued under this section shall not define or limit the amounts of any fees which may be imposed or collected by any State."

The working group was named the Alliance for Uniform HazMat Transportation Procedures. The Alliance submitted its report to the secretary November 17, 1993. The Alliance recommended a base state system pursuant to which each participating jurisdiction will assess a registration fee on motor carriers that transport hazardous materials within its borders. However, a single base state will be responsible for collecting the registration fees for all states and distributing the fees accordingly. Participating jurisdictions will issue a reciprocal national permit that will allow a motor carrier to transport hazardous materials in all participating jurisdictions. On July 1, 1993, the Alliance began a four-state pilot program to test its recommendations. The major objectives of the pilot program include testing the reciprocity provisions.

The Alliance noted that industry representatives expressed concerns as to flat fees because of recent court decisions. The Alliance achieved a consensus that any registration fee should be equitable. As a result of

501

discussions, the Alliance decided "to strongly *encourage* states to adopt fee structures that take into account the apportioned hazardous materials transportation activities by a carrier within their state." The Alliance stated that although the definition of equity of a fee structure is left to the individual states, "the use of an apportioned method of fee calculation is strongly encouraged."

The report of the Alliance makes clear its understanding that when Congress enacted 49 U.S.C. § 5125(g)(1), it did not intend to define or limit the amount of any fee which may be imposed or collected by any state. The regulations ultimately adopted by the Secretary of Transportation will depend on the outcome of the pilot program initiated by the Alliance.

This history negates the State's argument that in 49 U.S.C. § 5125(g)(1), Congress intended to remove state regulation of the transportation of hazardous materials from the jurisdiction of the states and the reach of the dormant Commerce Clause. As in *Norfolk Southern Corp. v. Oberly*, 822 F.2d 388, 397 (3d Cir. 1987), "the evidence demonstrates that Congress intended to encourage the states to use their existing powers more effectively."

"[F]or a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be unmistakably clear." *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984), *quoted in Norfolk Southern*, 822 F.2d at 397. Congress has not made it unmistakably clear that it has removed Wisconsin's HazMat fee from the reach of the dormant Commerce Clause.

## II.

## CHAPTER SERB 4

The State distinguishes the SERB 4 fees from the flat fees which the United States Supreme Court in *American Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266 (1987), found to violate the Commerce Clause. Pennsylvania imposed lump-sum annual taxes on the operation of trucks and truck tractors. The Court quoted *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977):

> A state tax on interstate commerce does not offend the Commerce Clause . . . if that tax [1] is applied to an activity with a substantial nexus with the taxing state, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the state.

*Scheiner*, 483 U.S. at 277. The Court said that Pennsylvania's taxes failed the third "prong" of the *Complete Auto* standard which prohibits discrimination against interstate commerce. *Id*. We conclude that Wisconsin's flat tax fails the second "prong" of the *Complete Auto* standard in that SERB 4 is not fairly apportioned. Because the fee offends the Commerce Clause in this respect, we need not consider whether the exemption from the SERB 4 fee for Wisconsin facilities which must pay a hazardous chemical inventory form fee violates the Commerce Clause. *See* § 166.20(7)(a)2, STATS.

■

The United States Supreme Court has described its responses to claims that specific state tax measures unduly burden interstate commerce as a "quagmire."

*Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 457-58 (1959), *cited in Scheiner*, 483 U.S. at 280. The Court has, however, settled on what it calls the "internal consistency" test, which demands that a state tax must be of a kind that "if applied by every jurisdiction, there would be no impermissible interference with free trade." *Id.* at 284 (quoting *Armco Inc. v. Hardesty*, 467 U.S. 638, 644 (1984)). The *Scheiner* Court said that "[i]f each State imposed flat taxes for the privilege of making commercial entrances into its territory, there is no conceivable doubt that commerce among the States would be deterred." *Id.*

Interstate and intrastate offerors and transporters of hazardous waste materials in Wisconsin may be required to pay annual fees of $2,000. While such a fee for an intrastate carrier may not be burdensome, if the same or similar fees were imposed by each state, the cost of doing business for an interstate carrier would be prohibitive. A half century ago, one commentator observed:

> True, each fee is imposed upon the use of different states' highways, but the cumulative effect does not result from the mileage or distance traveled, but from the interstate character of the journey. The same mileage in one state would result in only one tax.

Lockhart, *State Tax Barriers to Interstate Trade*, 53 Harv. L. Rev. 1253, 1269 (1940), *quoted in Scheiner*, 483 U.S. at 284 n.16.

The latest effort of the United States Supreme Court to extricate its decisions from the "quagmire" of its previous efforts is *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. —, 115 S. Ct. 1331

(1995). Oklahoma imposed a sales tax on the full price of a ticket for bus travel from Oklahoma to another state. The Court held that the tax was consistent with the Commerce Clause. The Court relied primarily on the "dash of . . . pragmatism" which it found in Justice Stone's opinion in *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250 (1938). Justice Stone examined New Mexico's franchise tax, measured by gross receipts, as applied to receipts from out-of-state advertisers in a journal produced by the taxpayer in New Mexico but circulated both inside and outside the state. *Jefferson Lines*, 514 U.S. at —, 115 S. Ct. at 1336. Justice Stone noted that "[t]he tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine." *Id.* at —, 115 S.Ct. at 1337 (quoting *Western Live Stock*, 303 U.S. at 260).

■

However, Wisconsin's HazMat fee is one which in form or substance can be repeated by other states in such manner as to lay an added burden on interstate transportation commerce. The *Jefferson Lines* Court concluded that the sale of a bus ticket was a "local activity" which was not taxable by another state. *See id.* at —, 115 S.Ct. at 1342-43. The taxpayer argued that there was no difference between Oklahoma's sales tax on bus travel and New York's gross receipts tax on transportation services struck down in *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653 (1948). However, the *Jefferson Lines* Court pointed out that *Central Greyhound* did not rest simply on the mathematical and administrative feasibility of a mileage apportionment, but on the seller-taxpayer's exposure to taxation by New Jersey and Pennsylvania

on portions of the same receipts that New York was taxing in their entirety. *Id.* at —, 115 S.Ct. at 1341.

The Court distinguished Oklahoma's sales tax from New York's transportation tax: "The taxable event [sale of a bus ticket] comprises agreement, payment, and delivery of some of the services in the taxing State; no other State can claim to be the site of the same combination." *Id.* at —, 115 S.Ct. at 1341. Wisconsin's "tax" is not, however, imposed on the "agreement, payment, and delivery" of disposal services in the state. Such a fee would closely resemble Oklahoma's sales tax on the event of the sale of a bus ticket. All carriers, interstate or intrastate, would pay the same facility fee. True, all other states could impose similar taxes on services provided by disposal facilities in those states. That would be constitutionally permissible under the Commerce Clause because the tax would be imposed on the delivery of services within the state. Chapter SERB 4 fees are not related to the services provided by in-state disposal facilities to interstate transporters but to carriers who cross the state line to use a facility in Wisconsin. Such fees are not "apportioned" in that they are unrelated to the extent of the carrier's use of Wisconsin's facilities or the mileage traveled within the state. Such a flat tax or fee clearly violates the spirit of the Commerce Clause to avoid the economic Balkanization that plagued relations among the Colonies and later among the States under the Articles of Confederation. *See Id.* at —, 115 S.Ct. at 1336 (citing *Wardaire Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1, 7 (1986); *Hughes v. Oklahoma*, 441 U.S. 322, 325-26 (1979); The Federalist No. 42 (J. Madison), 7 (A. Hamilton), 11 (A. Hamilton) (J. Cooke ed. 1961)).

A decision which evoked considerable discussion by the Alliance was *American Trucking Ass'ns, Inc. v. Secretary of State*, 595 A.2d 1014 (Me. 1991). The Alliance stated its understanding of the decision as follows: "The court implicitly rejected, by not addressing, the state's argument that a flat hazardous materials fee was equitable under the Hazardous Materials Transportation Uniform Safety Act . . . ." Maine imposed a flat tariff of $25 per truck for a one-year permit and $15 per truck for a five-day trip permit for carriers transporting hazardous materials. The Alliance was incorrect in concluding that the Maine Supreme Court did not address the validity of the state's hazardous waste carrier fee. The court specifically held that the statute imposing such fees violated the Commerce Clause. *Id.* at 1018. The court concluded that *Scheiner* superseded earlier cases which held that a flat hazardous material license fee was constitutional. *Id.* at 1016-17 (citing *New Hampshire Motor Transport Ass'n v. Flynn*, 751 F.2d 43 (1st Cir. 1984); *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707 (1972)). The court concluded that Maine's waste carrier fee "flunked" *Scheiner's* internal consistency test.

Likewise, we conclude that Wisconsin's flat fee for the transportation of hazardous materials fails the internal consistency test.

### III.

### THE "IMPRACTICABILITY" ARGUMENT

In its brief and at oral argument, the State emphasized the difficulty in apportioning the State's cost of hazardous materials response preparedness. It

pointed to a train derailment near Superior—representing a very low probability event carrying a high risk of harm. Certainly, the recent similar experience in Weyauwega dramatically illustrates how a single event in a relatively isolated area can require enormous response costs. We acknowledge that disasters associated with the transportation of hazardous materials cannot be predicted and can occur in wholly unexpected places. Nonetheless, there is a relation between the extent of a carrier's transportation of such materials and the risk of harm, and the State does not argue otherwise. In fact, the State acknowledges that the number of miles traveled or the number of shipments "tend to reflect degree of risk."

The State's complaint of impracticability is not based so much on the lack of apportionment factors upon which a tax or fee could be based but on the unavailability of information which would have allowed the State to construct a more equitable tax or fee. The apportioned fee which SERB proposed to substitute for SERB 4 is calculated by the number of transporter activities, the total Wisconsin hazardous material miles traveled within or through Wisconsin, and the total Wisconsin hazardous material in pounds transported within or through Wisconsin during the reporting period. WIS. ADM. CODE § ERB 4.04(1) (November 1995). Under the rule, the transporter is required to keep records verifying its mileage and volumes of hazardous material. Report on Changes Made to CR 95-051 as a Result of the Public Hearings, *included in* SERB Materials; § ERB 4.03(4). Recognizing the administrative difficulty of keeping records as to hazardous waste mileage and volumes, § ERB 4.06(1) permits a transporter to submit a

consolidated fee in lieu of the fee determined under § ERB 4.04(1).

SERB has demonstrated that enacting an apportioned fee for the transportation of hazardous materials is not impracticable. In fact, it has proposed just such an apportioned fee structure. We conclude that SERB prematurely established a hazardous materials registration fee before it could justify that fee under the constitutional commands of the Commerce Clause. It cannot justify imposing a flat unapportioned fee solely because it had not made the studies necessary to structure a constitutionally apportioned fee.

For these reasons, we declare that SERB 4 violated the Commerce Clause. We therefore remand this cause to the trial court with directions that plaintiffs' motion for summary judgment be granted.

*By the Court.*—Judgment and orders reversed and cause remanded with directions.