634 A.2d 1356

ROLLINS ENVIRONMENTAL SERVICES (NJ), INC., PETITION-
ER–APPELLANT, v. SCOTT WEINER, COMMISSIONER OF
THE DEPARTMENT OF ENVIRONMENTAL PROTECTION
AND ENERGY, AND NEW JERSEY DEPARTMENT OF ENVI-
RONMENTAL PROTECTION AND ENERGY, RESPONDENTS–
RESPONDENTS, AND JAYNEE LAVECCHIA, DIRECTOR AND
CHIEF ADMINISTRATIVE LAW JUDGE OF THE OFFICE OF
ADMINISTRATIVE LAW, RESPONDENT.

WASTE CONVERSION, INC., PETITIONER–APPELLANT, AND
MARK ALSENTZER, GREGORY BRENDLINGER AND MAR-
TIN BRUBAKER, PETITIONERS, v. SCOTT A. WEINER, COM-
MISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL
PROTECTION AND ENERGY, RESPONDENT–RESPONDENT,
AND JAYNEE LAVECCHIA, DIRECTOR AND CHIEF ADMIN-
ISTRATIVE JUDGE OF THE OFFICE OF ADMINISTRATIVE
LAW, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 7, 1993—Decided June 3, 1993.

162

Before Judges KING, BRODY and THOMAS.

*James Stewart* argued the cause for appellant Rollins Environ-mental Services (NJ), Inc. (*Lowenstein, Sandler, Kohl, Fisher & Boylan,* attorneys; *Mr. Stewart,* on the brief and reply brief).

*Richard L. Caplan,* admitted *pro hac vice,* argued the cause for appellant Waste Conversion, Inc. (*Caplan & Luber,* attorneys; *Mr. Caplan* and *Steven N. Yermish,* on the brief and reply brief).

*Robert A. Marshall,* Deputy Attorney General, argued the cause for respondents (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* of counsel; *Mr. Marshall,* on the briefs).

The opinion of the court was delivered by

BRODY, J.A.D.

We now consolidate these separate appeals from a final decision of the Commissioner of the Department of Environmental Protection and Energy (DEPE) imposing civil administrative penalties upon appellants Rollins Environmental Services (NJ), Inc. and Waste Conversion, Inc. The penalties were imposed for violating regulations, adopted pursuant to the Solid Waste Management Act (SWMA), *N.J.S.A.* 13:1E–1 *et seq.*, governing the transportation and disposal of hazardous wastes. The wastes were hazardous incinerator ash and scrubber lime sludge generated at Rollins' Bridgeport, New Jersey incinerator and disposed of as non-hazardous waste at a disposal site in Belleville, Michigan, owned by Wayne Disposal, Inc. The Commissioner assessed Rollins $539,200 because it had mishandled the disposal of 582 twenty-ton truckloads of the waste and assessed Waste Conversion $262,500 because it had arranged for the disposal of the waste and actually transported 87 of the truckloads. We affirm the penalties because the evidence justifies the penalties and appellants' legal arguments are without merit.

Rollins indiscriminately mixed characteristic hazardous wastes, listed hazardous wastes and non-hazardous wastes in its incinerator operation. Characteristic hazardous wastes exhibit readily detectable hazardous characteristics such as ignitability, corrosivity, or high concentrations of toxic heavy metals. Listed hazardous wastes are not readily detectable as hazardous but are deemed hazardous if specifically listed in DEPE regulations as wastes that may be carcinogenic, mutagenic, or otherwise cause harm to people or animals.

After being incinerated or mixed with other material, hazardous wastes may in fact no longer be hazardous. They remain hazardous by definition, however, if they were derived, in whole or in part, from listed hazardous wastes. Upon submission of proof that a batch of listed hazardous waste has in fact become non-hazardous, that waste may be delisted. *N.J.A.C.* 7:26–8.17. Rollins' ash and lime sludge were listed hazardous wastes because

they were derived in part from the incineration of listed hazardous wastes. *N.J.A.C.* 7:26–8.1.

In order to track their proper transportation and disposal, hazardous wastes may not be transported lawfully without accompanying written manifests that describe them and provide information respecting their disposal. Under DEPE regulations the generator and transporter of hazardous wastes are absolutely responsible for the accuracy of the information contained in the manifests. The manifests that accompanied the truckloads of waste in question falsely described the waste as "Non-hazardous Waste, Chemical Process Solid N.O.S., Non–Regulated Material" even though they contained listed hazardous wastes. Appellants do not deny their liability under the regulations; their main arguments are that the Commissioner did not adequately mitigate the penalties because of extenuating facts.

Rollins claims that the sole or at least major blame for the false manifests lies with Dennis Zimmer, a Waste Conversion salesman. Waste Conversion received a commission for brokering waste disposal business to Wayne Disposal in Michigan. Zimmer obtained a disposal fee quotation from Wayne Disposal that was substantially lower than the fee Rollins was paying at an Ohio site where it was disposing its hazardous waste. He obtained this low quotation by misrepresenting to Wayne Disposal that Rollins' waste was non-hazardous. At the same time he misrepresented to Rollins that Wayne Disposal would dispose of the waste as hazardous. After Rollins switched to Wayne Disposal, Zimmer persuaded Rollins to sign manifests that described the wastes as nonhazardous by representing that Michigan permits the disposal of listed hazardous wastes as though they were non-hazardous.

Zimmer was unwittingly aided in this fraud by the neglect of DEPE. In addition to providing space for a verbal description of waste as either hazardous or non-hazardous, the manifest form provided a space for inserting one of several DEPE codes used to describe the waste. The Commissioner acknowledged that, at the time, DEPE tolerated the use of an "X" code that had not been

formally adopted. Moreover, it was generally known that the "X" code meant "hazardous waste" to some and "non-hazardous waste" to others. At Zimmer's suggestion, Rollins used the "X" code on the manifests instead of the one it had used in disposing of its wastes in Ohio. A DEPE inspector failed to issue violations after he had examined the mislabeled manifests.

The matter was first heard by an Administrative Law Judge (ALJ) who imposed penalties lower than the penalties imposed by the Commissioner in his final decision. As to Rollins, for failing "to properly complete any part of the manifest form" (*N.J.A.C.* 7:26–7.4(e)1), failing to state on the manifest the "name, type and quantity of hazardous waste being shipped" (*N.J.A.C.* 7:26–7.4(a)4vii) and failing to state on the manifest required "handling instructions" (*N.J.A.C.* 7:26–7.4(a)4viii) the ALJ recommended a penalty of $89,500—$500 for each of the 179 days that Wayne Disposal disposed of Rollins' hazardous waste as non-hazardous waste. For shipping hazardous waste for non-hazardous disposal (*N.J.A.C.* 7:26–7.4(e)4) the ALJ recommended another $89,500 penalty. Thus the total recommended penalty was $179,000.

The Commissioner increased Rollins' penalty to $539,200. He considered each of the 582 truckloads to be a separate violation and imposed a $1,500 penalty for each of the 151 truckloads Rollins dispatched before the DEPE inspector examined the improper manifests without comment and only $100 for each of the 431 truckloads dispatched thereafter. The $1,500 penalty was the lowest penalty under DEPE non-binding guidelines for regulatory offenses where the conduct was "major" but the damage done was "minor." At the time, *N.J.S.A.* 13:1E–9e provided a civil administrative penalty of not more than $25,000 for each violation of a regulation.[1]

As to Waste Conversion, for transporting "hazardous waste to a hazardous waste facility which is not an authorized facility"

---

[1] The Legislature has since increased the maximum penalty for each violation to $50,000. *L.*1986, *c.* 170, § 1.

(*N.J.A.C.* 7:26–7.5(g)3) the ALJ recommended a penalty of $43,-500—$500 for each of 87 truckloads that Waste Conversion had transported to Wayne Disposal for non-hazardous waste disposal. The ALJ absolved Waste Conversion and some of its principals from charges related to Zimmer's fraudulent conduct.

The Commissioner increased Waste Conversion's penalty to $262,500. Unlike the ALJ, the Commissioner attributed Zimmer's conduct to Waste Conversion and imposed a $1,500 penalty for each of the 87 truckloads of hazardous waste that it accepted "from a generator who fails to properly complete the manifest form" (*N.J.A.C.* 7:26–7.5(g)2), another $1,500 penalty for each of the 87 truckloads of hazardous waste it transported to an unauthorized disposal facility, and a single $1,500 penalty for Zimmer's "[f]raud, deceit, or misrepresentation" (*N.J.A.C.* 7:26–16.9(a)2).

■ Appellants first argue that the penalties are excessive. Our role is limited when reviewing the findings of an administrative agency particularly where, as here, agency expertise is a factor. We must decide " 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility ... and ... with due regard also to the agency's expertise where such expertise is a pertinent factor." *Mayflower Securities Co. v. Bureau of Securities*, 64 *N.J.* 85, 92–93, 312 *A.*2d 497 (1973) (quoting from *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965)).

■ SWMA mandates the imposition of civil administrative penalties. *N.J.S.A.* 13:1E–9b(3) provides in part that where there has been a violation of a DEPE regulation the Commissioner "shall ... [l]evy a civil administrative penalty...." Thus the Commissioner was obliged to impose penalties for these violations. *New Jersey Dep't of Envtl. Protection v. Lewis*, 215 *N.J.Super.* 564, 575, 522 *A.*2d 485 (App.Div.1987). Moreover, a violator is strictly liable. "[W]hile the absence of intent or *mens rea* may be

a basis for mitigation, it does not completely obviate liability for the violation." *Id.* at 574, 522 *A.*2d 485.

■ Unlike the ALJ, the Commissioner correctly penalized Rollins by treating each improperly documented truckload of hazardous waste as a separate offense. *In re Fiorillo Bros. of N.J., Inc.,* 242 *N.J.Super.* 667, 686–87, 577 *A.*2d 1316 (App.Div.), *certif. denied,* 122 *N.J.* 363, 585 *A.*2d 371 (1990). Rollins argues that the Commissioner did not adequately take into account that it was the victim of Waste Conversion's fraud and DEPE's negligence in enforcing its regulations. We disagree. The Commissioner properly recognized that a hazardous waste generator, especially one as experienced and sophisticated as Rollins, may not avoid its statutory responsibility to dispose of the waste properly by pleading that it was duped by the word of a vendor's salesman. The Commissioner greatly reduced Rollins' potential penalty in recognition of lapses by the Department and its inspector that may have made it easier for Zimmer to work his machinations. There is no basis for us to disturb Rollins' penalty.

■ Waste Conversion does not argue that the Commissioner erroneously imputed to it the conduct of Zimmer, its salesman. Rather, it argues that there was no credible evidence in the record that Zimmer knew or should have known that Rollins' waste, which was without hazardous characteristics, was deemed hazardous because it was derived from listed hazardous waste. Waste Conversion also argues that it is entitled to the same mitigation of penalty that Rollins received based on the neglect of DEPE and its inspector.

Steven Petner, Rollins' plant manager, testified that he told Zimmer that though the waste was not characteristically hazardous, it was legally hazardous because it was derived from listed hazardous waste.

We cannot fault the Commissioner for failing to mitigate Waste Conversion's penalty on account of DEPE's lapses respecting the use of "X" codes and the neglect of its inspector. The Commis-

sioner concluded that these lapses contributed to Zimmer's ability to deceive Rollins, thereby mitigating its penalty, but Zimmer was not deceived. There was evidence that Zimmer, knowing that DEPE tolerated use of the ambiguous "X" codes, manipulated their use to enhance his credibility with Rollins thereby enabling Waste Conversion to obtain Rollins' business. In any event, it is clear from the evidence that apart from any neglect by DEPE, Zimmer knew that Rollins wanted the waste disposed of as hazardous, yet arranged to haul it under manifests stating that it was non-hazardous and to dispose of it as though it were non-hazardous.

■ Appellants next argue that the DEPE regulation defining listed hazardous wastes to include wastes "derived from" listed hazardous wastes is invalid. The argument is based on the holding in *Shell Oil Co. v. Environmental Protection Agency*, 950 *F*.2d 741 (D.C.Cir.1991), *reh'g denied*, Feb. 12, 1992, decided after the Commissioner entered his final decision. There the court held that a similar "derived-from" Federal Environmental Protection Agency (EPA) regulation was not properly adopted pursuant to the Federal Administrative Procedure Act because in its final form it departed too much from the form it had when advertised before the public comment period.[2]

The validity of the DEPE regulation that the Commissioner applied here does not depend upon whether a Federal Court of Appeals concluded that a similar Federal regulation had not been properly adopted under Federal administrative procedures. Appellants do not suggest that our Legislature is constitutionally obliged to permit New Jersey generators of hazardous waste and their haulers to truck the waste through New Jersey for out-of-state disposal with no concern for whether it will be transported or disposed of safely.

---

[2] The EPA has since readopted the "derived-from" regulation. 57 *Fed.Reg.* 7628–37 (1992).

■ Waste Conversion alone raises the last point that we need to discuss. It argues that the ALJ's initial decision must be deemed adopted because the Commissioner filed his final decision out of time without first having obtained an extension. The relevant portion of *N.J.S.A.* 52:14B–10(c) provides:

> The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency. The recommended report and decision shall be a part of the record in the case. For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension.

The statute is a part of the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15.

Regulations promulgated pursuant to the APA include *N.J.A.C.* 1:1–18.8, which provides in relevant part:

> (b) A request for extension of any time period must be submitted no later than the day on which that time period is to expire. This requirement may be waived only in case of emergency or other unforeseeable circumstances.
>
>    *    *    *    *    *    *    *    *
>
> (e) If the agency head requests an extension of the time limit for filing a final decision, he or she shall sign and forward a proposed order to the Director of the Office of Administrative Law and serve copies on all parties. If the Director approves the request, he or she shall within 10 days of receipt of the proposed order sign and issue the order and cause it to be served on all parties.

The Commissioner's good-faith need for an extension of the 45–day period is not questioned. Because of the voluminous record, the ALJ had received four extensions to file his initial decision, the DEPE had received two extensions to file its exceptions and appellants had received an extension to file theirs.

On the occasion in question, the Commissioner's final decision was due August 30, 1991, the Friday before the Labor Day weekend. He signed a request for an extension on Thursday, August 29. However, for reasons not found in the record, his office neglected to forward the request to the Director of the Office of Administrative Law until Wednesday, September 4. The Director approved the request the next day.

■ The statutory deadline will not be literally enforced where, as here, the agency head is not dragging his feet in issuing a final decision. In the absence of "bad faith, inexcusable negligence, or gross indifference" on the part of the Commissioner, the deadline may not be used to deprive him of his statutory responsibility to decide the issues before him. *See King v. New Jersey Racing Comm'n,* 103 *N.J.* 412, 421, 511 *A.*2d 615 (1986).

We are satisfied from a careful review of this record that the other issues raised are clearly without merit and require no further discussion. *R.* 2:11–3(e)(1)(E).

Affirmed.