734 A.2d 314

AMERICAN TRUCKING ASSOCIATIONS, INC., A NON–PROFIT CORPORATION, INCORPORATED UNDER THE LAWS OF THE DISTRICT OF COLUMBIA; SUTTLES TRUCK LEASING, INC., AN ALABAMA CORPORATION, ON BEHALF OF THEM-SELVES AND OTHERS SIMILARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1999—Decided June 15, 1999.

1

Before Judges STERN, LANDAU and BRAITHWAITE.

*Catherine A. Tormey*, Deputy Attorney General, argued the cause for appellant (*Peter Verniero*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Ms. Tormey* and *Barbara Conklin*, Deputy Attorney General, on the brief).

*Robert Digges, Jr.,* argued the cause for respondents (*Connell, Foley & Geiser* and *ATA Litigation Center,* attorneys; *Daniel R. Barney, Mr. Digges, pro hoc vice, Kevin J. Coakley* and *Charles Rothfeld,* of counsel; *Brendan Judge,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This case comes to us on remand by the Supreme Court, 154 *N.J.* 604, 713 *A.*2d 497 (1998), which granted a motion by the State of New Jersey (State) for leave to appeal a Tax Court order granting partial summary judgment to American Trucking Associations, Inc. and Suttles Truck Leasing, Inc., plaintiffs in a class action. On the proofs before it, the Tax Court ruled that hazardous waste transporter registration fees, authorized under *N.J.S.A.* 13:1E–18 of the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 to –207, and regulations [1] adopted by the Department of Environmental Protection (DEP) to register and track vehicles that collect or deliver hazardous waste in New Jersey, constitute a burden upon interstate commerce in violation of the Commerce Clause, *U.S. Const.,* art. I, § 8, ¶ 3.

The courts of each of the fifty states have jurisdiction to make separate and varying rulings as to the commerce impact of the hazardous waste hauling fees of their respective states. We conclude, however, that a final judgment, and particularly summary judgment, should not issue in this state absent critical input from the United States Department of Transportation (USDOT), which has been charged by Congress with administration of the Hazardous Materials Transportation Act (HMTA), 49 *U.S.C.A.* § 5101 to 5127, to promote uniformity and to ensure fairness of hazardous waste hauling fees imposed by the respective states. Accordingly, we reverse and remand, with directions.

---

[1] Formerly codified at *N.J.A.C.* 7:26–4A.3(g); presently *N.J.A.C.* 7:26G–3.3(g).

## The Procedural History

In a Tax Court complaint dated October 26, 1992, plaintiffs challenged the constitutionality of the hazardous waste transporter fee regulation promulgated by the DEP. Plaintiffs claimed that the transporter fees are flat taxes, unapportioned, and not fairly related to the feepayer's level of presence or activities in New Jersey.

In lieu of answering the complaint, the State moved to transfer the matter to the Appellate Division. By order dated January 3, 1994, the Tax Court denied the motion to transfer because of plaintiffs' contention that the transporter fees were not fees for services but revenue raising devices that were the functional equivalent of flat taxes. We denied the State's motion for leave to appeal.

On August 3, 1994, the presiding Tax Court judge denied the parties' cross-motions for summary judgment, finding that genuine issues of material fact precluded entry of summary judgment.

The Tax Court judge later certified the class. Plaintiffs and the State again cross-moved for summary judgment in 1997. By order entered March 23, 1998, another Tax Court judge granted plaintiffs' motion and denied the State's cross-motion.

The State moved unsuccessfully before the Tax Court for a stay of the decision, for a stay of proceedings on plaintiffs' claim for a refund and an award of counsel fees, as well as for an order certifying the March 23, 1998 order as a final judgment under *R.* 4:42–2. We denied the State's motions for leave to appeal and for stay pending appeal, but on June 30, 1998, the Supreme Court granted leave to appeal and summarily remanded the matter to this court for resolution. On August 4, 1998, we stayed further proceedings in the Tax Court pending resolution of the appeal, but denied the State's renewed motion for a stay of operation of the Tax Court decision.

## The Challenged Regulations

At the time the complaint was filed, the hazardous waste transporter fees were codified at then *N.J.A.C.* 7:26-4A.3(g)(1). Effective October 21, 1996, the transporter fees were recodified at *N.J.A.C.* 7:26G-3.3(g). 28 *N.J.R.* 1693(a); 28 *N.J.R.* 4606(a). The rates were modified slightly, lowering the annual amounts due, but retaining the same structure:

(g) The fee schedule for hazardous waste transporters is as follows:

1. All hazardous waste transporters shall pay an annual registration fee. A State of New Jersey hazardous waste transporter registration decal will be issued for each hazardous waste cab and transport unit (as defined at *N.J.A.C.* 7:26G-4.2) for which a fee is paid. The fee registration year shall extend from October 1 through the following September 30. The fee shall accompany the submission of the annual registration application. All vehicles registered with the Department must be owned or leased by the applicant. If the vehicle is leased, a copy of the lease must be submitted with the registration application. The registration of a hazardous waste transporter is nontransferable and fees are not refundable. The annual registration fees are as follows:

i. Each hazardous waste cab: $21.00;

ii. Each hazardous waste transport unit, either detachable or with a permanently attached hazardous waste cab, having a capacity less than or equal to one ton (one ton = one cubic yard = 200 gallons): $85.00;

iii. Each hazardous waste transport unit without a hazardous waste trailer having a capacity greater than one ton (one ton = one cubic yard = 200 gallons): $191.00; and

iv. Each hazardous waste transport cab with permanently attached hazardous waste transport unit with a capacity greater than one ton (one ton = one cubic yard = 200 gallons): $212.00.

[*N.J.A.C.* 7:26G-3.3(g).]

## The Tax Court Opinion

In a March 11, 1998, oral decision, the Tax Court judge discussed two statistical reports prepared by plaintiffs' expert, Coopers & Lybrand, dated November 8, 1995, and April 16, 1996, which addressed the transporter fees. The reports compare the average cost per manifest [2] for "New Jersey-based transporter

---

[2] "In order to track their proper transportation and disposal, hazardous wastes may not be transported lawfully without accompanying written manifests that

firms" with the average cost for "non-New Jersey-based transporter firms". Coopers & Lybrand defined non-New Jersey firms as those companies having eighty percent or more of their hazardous waste motor vehicles registered in states other than New Jersey, and defined New Jersey firms as those having eighty percent or more of their hazardous waste motor vehicles registered in New Jersey.

According to Coopers & Lybrand's April 16, 1996 report, on a per manifest basis, New Jersey companies paid on average: $8.35 for the period from October 1, 1991 to September 30, 1992; $7.80 for the period from October 1, 1992 to September 30, 1993; and $7.53 for the period from October 1, 1993 to September 30, 1994. On a per manifest basis, non-New Jersey companies paid on average: $26.01 for the period from October 1, 1991 to September 30, 1992; $26.87 for the period from October 1, 1992 to September 30, 1993, and $24.27 for the period from October 1, 1993 to September 30, 1994.

The judge rejected the State's claim that there was a material question of fact whether the use of an arbitrary eighty percent cut-off to determine the two classes (non-new Jersey and New Jersey transporters) biased the data and pre-determined the result. As the State's quarrel was with the conclusions drawn, not with the data drawn from the State's own computer runs, the judge determined that this question was ripe for summary judgment, and that the accuracy of the data had not been challenged in a meaningful way. It was noted that the State did not provide any independent expert analysis and thus failed to raise a genuine issue of material fact regarding Coopers & Lybrand's conclusion. Accordingly she found that the Coopers & Lybrand reports were "unequivocally demonstrative of the discriminatory impact that the transporter fees have on out-of-state transporters".

---

describe them and provide information respecting their disposal." *Rollins Envtl. Servs. (NJ), Inc. v. Weiner*, 269 *N.J.Super.* 161, 166, 634 A.2d 1356 (App.Div.1993).

The State argued that the Coopers & Lybrand reports unfairly excluded from statistical analysis the effect of one out-of-state transporter, Safety–Kleen, which conducts a high amount of manifest activity in New Jersey. The judge concluded that Safety–Kleen was different from companies that simply transported waste. The transporter fees paid by Safety–Kleen were not proportional to the manifest activity, and for purposes of analyzing intrastate versus interstate activity it would be more reasonable to treat Safety–Kleen as a New Jersey company. It was thus concluded that the business Safety–Kleen did in New Jersey should be considered intrastate in terms of its activities.

In sum, it was held that the New Jersey transporter fees failed under a dormant Commerce Clause analysis because they were not fairly apportioned, discriminated in favor of intrastate commerce, and were unrelated in the Commerce Clause sense to the services provided by the State. The Tax Court opinion also held that it did not matter whether the transporter fee is labeled as a user fee, tax, flat tax, or a flat annual fee because the essential question under *American Trucking Associations, Inc. v. Scheiner,* 483 *U.S.* 266, 295, 107 *S.Ct.* 2829, 2846, 97 *L.Ed.*2d 226, 250 (1987) is whether interstate commerce has been burdened.

*Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 *U.S.* 707, 92 *S.Ct.* 1349, 31 *L.Ed.*2d 620 (1972) was distinguished because New Jersey's transporter fees are unlike enplaning or head taxes imposed on airline passengers,[3] in that New Jersey imposes the same transporter fee on a vehicle that makes a single pick-up of waste within the state as it imposes on a vehicle that makes 100 pick-ups and 100 deliveries of waste within the state over the course of any given year. This, it was held, constitutes a discriminatory effect rendering the New Jersey

---

[3] The airport fees considered in *Evansville–Vanderburgh* are now the subject of a specific statute, the Anti–Head Tax Act (AHTA), 49 *U.S.C.A.* § 40116, which sets down a "reasonableness" standard. *Evansville,* however, remains a viable statement of accepted legal principles. *See Northwest Airlines, Inc. v. Kent County, Mich.,* 510 *U.S.* 355, 369, 114 *S.Ct.* 855, 127 *L.Ed.*2d 183, (1994).

method of imposing fees invalid under Commerce Clause analysis because the fees bear no relationship to the transporter's actual activities in the state, violating the test set forth in *Complete Auto Transit, Inc. v. Brady,* 430 *U.S.* 274, 279, 97 *S.Ct.* 1076, 1079, 51 *L.Ed.2d* 326, 331 (1977), and because they are unapportioned, discriminate against interstate commerce, and unduly burden interstate commerce. In addressing the threshold issue whether Congress had exercised its power under the Commerce Clause to regulate commerce among the several states as to transporter fees by enacting 49 *U.S.C.A.* § 5125(g)(1)[4], the judge found that Congress did not manifest an unambiguous intent that the statute would permit fees to be levied by states in regulation of hazardous waste transport without regard for Commerce Clause restraints.

### The Appeal

On appeal, the State argues: (1) this court should reverse the order granting partial summary judgment and grant the State's motion for summary judgment because its unopposed proofs are so one-sided that a reasonable factfinder should have concluded that the transporter fee operates as a fee and not as a general revenue-raising tax; (2) in the event that this court decides that the transporter fee is, in fact, a general revenue-raising tax, this court should reverse the order granting partial summary judgment because there were substantial material questions of fact whether the "tax" discriminated against transporters engaged in interstate commerce, which preclude entry of summary judgment in plaintiffs' favor; (3) the judge erred as a matter of law by declaring the transporter fee unconstitutional because the Hazardous Materials Transportation Act, 49 *U.S.C.A.* §§ 5101–5127, authorizes the DEP to impose transporter fees and therefore that Act, and not the Commerce Clause, should be deemed to set the standard by which the transporter fees should be judged; and (4) the transporter registration fee satisfies the United States Su-

---

4 Quoted, *infra,* at p. 12, 734 *A.2d* at p. 320.

preme Court's standards applicable to user fees and non-discriminatory safety regulations, as well as the test used to review general revenue-raising state taxes, and therefore withstands constitutional scrutiny.

The State also urges that the summary judgment was partial and the judge erred by not certifying the March 23, 1998, order as a final judgment under *R.* 4:42–2. We deem the argument respecting finality to have been rendered moot by the Supreme Court's grant of leave to appeal.

■ We turn briefly to the State's argument that, as the modest proceeds from the DEP's transporter fees roughly match its documented costs of administration[5], the Tax Court should not have found that the fees operate as a revenue measure. Our review of the record satisfies us that the fees are clearly not a form of hidden tax revenue production. Indeed, the State's expense submission appears to cover only those costs attached to administering the DEP program. We note that under *N.J.S.A.* 39:5B–25 to 32, substantial and undoubtedly costly responsibilities are also imposed upon the New Jersey Department of Transportation, the Division of Motor Vehicles and the State Police for preventative and spill cleanup measures attributable to hazardous waste transport within the state.

■ Two considerations arise in connection with the fee-versus-revenue issue: (1) jurisdiction of the Tax Court, and (2) relevance of the label "fee" or "tax" to the issues of burden upon commerce and fairness. Both considerations may be disposed of briefly. Respecting the Tax Court, it had initial jurisdiction to determine its own jurisdiction, and retained jurisdiction without earlier interference by this court. *See N.J.S.A.* 2B:13–2b. Notwithstanding our determination that DEP's transporter fees are not designed for revenue, we see no presently sound reason to

---

[5] The overall "surplus" in a six-year period was about seven percent of the total fees received.

reject the Tax Court's opinion solely on jurisdictional grounds. It is, after all, correct that if the Commerce Clause is the only consideration, a label of "fee" or "tax" will not alter the constitutional result where the practical effect of transporter fees is an undue burden upon commerce. *Scheiner, supra,* 483 *U.S.* at 295, 107 *S.Ct.* 2829.

The remainder of the State's arguments on appeal primarily challenge the award of summary judgment to plaintiffs because of the assertedly questionable statistical techniques used by plaintiffs' expert, and by reason of alleged errors in construing the effect of HMTA upon the dormant Commerce Clause arguments made by plaintiffs.

■ But for the concerns we express below, these briefed and argued issues would now be addressed. We do not, however, because a patchwork of varying State court opinions serves the Commerce Clause no better than the patchwork of conflicting state and federal regulations which Congress sought to reconcile by adopting amendments to HMTA and to the Hazardous Materials Transportation Uniform Safety Act of 1990 [6] (HMTUSA) in 1994. The announced goal of the HMTA was to promote uniformity by adoption of a national regulation to replace patchwork state and federal laws concerning transport of hazardous materials. *Cf. Southern Pacific Transp. v. Public Serv. Comm'n of Nev.,* 909 *F.*2d 352, 353 (9th Cir.1990); *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 *F.*2d 1103, 1112 (3rd Cir.1985), *cert. denied,* 475 *U.S.* 1013, 106 *S.Ct.* 1190, 89 *L.Ed.*2d 305 (1986).

The legislative history of the 1994 amendments made by P.L. 103–111 is illuminating. Senate Report No. 103–217, U.S. Code Cong. & Admin.News 1994, 1763, 1766, includes the following description in its summary of the legislation:

5. It permits DOT to require State and local jurisdictions to justify fees imposed in connection with hazmat [7] transportation.

---

[6] Now embodied in 49 *U.S.C.A.* § 5101 to 5127.

[7] Hazardous materials.

Describing the effect of the 1994 amendments respecting fees, Section 6 of the Summary contained in the Senate Report states:

> This section amends section 112(b) of the HMTA by permitting DOT to require State and local jurisdictions and Indian tribes to justify fees imposed in connection with hazmat transportation. Pursuant to this authority, DOT may request submission of a report including information such as the basis on which the fee is levied on those persons involved in such transportation, the purposes for which the fee revenues are to be used, the total annual amount of fee revenues collected, and any other relevant data.
>
> Under the HMTA as amended by HMTUSA, DOT has the authority to preempt the imposition of fees by a State or local jurisdiction or Indian tribe if such fees are excessive or if such fees are used for purposes unrelated to hazmat transportation. This section provides DOT with specific statutory authority to obtain the necessary information from these State or local jurisdictions or Indian tribes to determine the reasonableness of such fees. The Secretary should exercise discretion in requesting justification under this section with a view toward ensuring that this process is not unduly burdensome.

We note particularly the legislative understanding that DOT has the authority to preempt imposition of fees by a State, and to secure information respecting the basis for, and the reasonableness of, such fees. Congress has provided in 49 *U.S.C.A.* § 5125(g) that:

> (1) A State, political subdivision of a State, or Indian tribe may impose a fee related to transporting hazardous material only if the fee is fair and used for a purpose related to transporting hazardous material, including enforcement and planning, developing, and maintaining a capability for emergency response.
>
> (2) A State or political subdivision thereof or Indian tribe that levies a fee in connection with the transportation of hazardous materials shall, upon the Secretary's request, report to the Secretary on—
>
> (A) the basis on which the fee is levied upon persons involved in such transportation;
>
> (B) the purposes for which the revenues from the fee are used;
>
> (C) the annual total amount of the revenues collected from the fee; and
>
> (D) such other matters as the Secretary requests.

Congress also authorized establishment of a "working group" to decide and recommend *inter alia* "whether to limit the filing of any State registration and permit forms and collection of filing fees to the State in which the person resides or has its principal place of business." 49 *U.S.C.A.* § 5119(a), (b). The Secretary was directed to prescribe regulations to implement those recommendations, provided that a regulation "may not define or limit the

amount" of such state fees. 49 *U.S.C.A.* § 5119(c). We read this language clearly to contemplate that DOT, with the benefit of the working group report, should adopt regulations that are addressed to uniformity, and which include provisions directed at state permit and filing fees. Such fee-directed regulations may not, however, "define or limit the amount" of such fees.

As noted by the Wisconsin Court of Appeals in *American Trucking Associations, Inc. v. State of Wisconsin*, 205 *Wis.*2d 494, 556 *N.W.*2d 761, 765 (Wis.App.), *review denied*, 207 *Wis.*2d 285, 560 *N.W.*2d 274 (1996), such a working group was established in 1993. Although some recommendations were made, it is now 1999 and no regulations have yet been promulgated.

We respectfully disagree with the Wisconsin Court's apparent interpretation that the above-quoted passage precludes *any* regulation of State fees fairness by DOT. *See American Trucking, supra,* 556 *N.W.*2d at 764. The statute, as we read it, precludes only *defining* or *limiting the amount* of a regulatory fee, not ruling or regulating as to the basis and manner of its imposition to achieve the "fairness" goal of the federal statute. Our reading, we believe, harmonizes with the text of 49 *U.S.C.A.* 5125(g), the purpose of which, as set forth in the Senate report, would be disserved under the reading of 49 *U.S.C.A.* 5119(c) endorsed in the Wisconsin case.

Given the goal of uniformity expressed as a purpose of federal hazmat legislation, we find it difficult to imagine that a DOT "fairness" ruling under 49 *U.S.C.A.* § 5125(g) would wholly ignore consideration of whether a state fee unreasonably burdens commerce in making its fairness determination. In this regard, we note that DOT rules governing waiver of preemptive applications respecting highway routing, for example, provide that it may waive preemption, even where a "court of competent jurisdiction" has determined that the State action has been preempted, provided that the DOT determines that the public has received equal protection and that commerce is not unreasonably burdened. *See* 49 *CFR* § 107.221(b); 49 *CFR* § 397.213.

Congress could scarcely have intended that DOT be its principal designee to achieve uniformity and serve the public interest[8] respecting unreasonable burdens on commerce imposed by routing, one form of state action affecting hazardous waste transport, while leaving it to the courts of each state to decide, inconsistently with each other, whether that state's transporter fees unduly burden commerce. Such an interpretation does not square with the quoted legislative history, with the expressed goal of uniformity, nor with reason.

Moreover, as the issue of DEP's hazardous waste transporter fees can be resolved by DOT, the cognizant federal agency, on "fairness" grounds, we think it proper to invoke the traditional judicial doctrine that shuns resolution of a case on constitutional grounds when other grounds are available. *See, e.g., O'Keefe v. Passaic Valley Water Comm'n,* 132 *N.J.* 234, 240–41, 624 *A.*2d 578 (1993); *Donadio v. Cunningham,* 58 *N.J.* 309, 325–326, 277 *A.*2d 375 (1971); *Sacks Realty Co. v. Shore,* 276 *N.J.Super.* 621, 625, 648 *A.*2d 736 (App.Div.1994). Citing *Rescue Army v. Municipal Court,* 331 *U.S.* 549, 568, 571, 67 *S.Ct.* 1409, 91 *L.Ed.* 1666 (1947), our Supreme Court outlined the policy consideration underlying the necessity doctrine:

> a respect for other branches and levels of government, an awareness of the limitations of judicial power, sensitivity to the burdens of a constitutional adjudication, and appreciation that others may provide a more useful answer.
>
> *O'Keefe, supra,* at 241–42, 624 *A.*2d 578.

Apart from its regulatory powers, the DOT has a practice of responding to requests for rulings respecting preemption of State transporter fees by the HMTA. *See, e.g., MTB in State of Vermont Rules, DOT Inconsistency Ruling* (IR–15) 49 *Fed.Reg.* 46660 (1984). *See also S. Rep.* No. 103–217, quoted above at page 11, 734 *A.*2d at page 320 of this opinion (DOT has the authority to

---

[8] Subject, of course, to review by the federal courts, which are required to accord the agency decision "substantial deference" *See Northwest Airlines, supra,* 510 *U.S.* at 367, 114 *S.Ct.* 855; *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 *U.S.* 837, 842–45, 104 *S.Ct.* 2778, 81 *L.Ed.*2d 694 (1984).

preempt the imposition of fees by a State or local jurisdiction or Indian tribe if such fees are excessive or if such fees are used for purposes unrelated to hazmat transportation.... DOT has authority to obtain necessary information from states to determine reasonableness of such fees).

■ We reject as premature, and probably ultimately unnecessary, the Tax Court's grant of summary judgment declaring DEP's hazardous waste transporter fees to be constitutionally invalid under the dormant Commerce Clause.

Much as the federal courts have frequently decided under the doctrine of primary jurisdiction [9], DOT properly should first be asked to determine the fairness issue on a record it deems appropriate. That may well incorporate much of the material which appears in the present record. On a submission made pursuant to 49 *U.S.C.A.* § 5125(g), DOT must then entertain evidence, statistical or otherwise, related to its consideration of the propriety of DEP's transporter fees, perhaps including the substantial costs incurred by New Jersey agencies other than DEP that arise from hazardous materials transport in this state. *See, e.g., N.J.S.A.* 39:4–25 to –32.

Recently, in *Village of Ridgefield Park v. New York, Susquehanna and Western Railway,* 318 *N.J.Super.* 385, 724 *A.2d* 267 (App.Div.), *certif. granted,* 160 *N.J.* 476, 734 *A.2d* 791 (1999), we reached a similar conclusion in a railroad regulation case, where preemption by the federal Surface Transportation Board (STB) under the ICC Termination Act of 1995 seemed likely. We there required that the plaintiff first submit its claim to the STB for resolution, concluding that "the concerns raised ... are a matter at least for the primary jurisdiction of the responsible agency ...

---

[9] *See, e.g., Nader v. Allegheny Airlines, Inc.,* 426 *U.S.* 290, 304, 96 *S.Ct.* 1978, 1989, 48 *L. Ed.*2d 643 (1976) (doctrine particularly apt where validity of a rate or administrative expertise and experience involved); *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.,* 953 *F.2d.* 1431 (3d Cir.1991), *cert. denied,* 505 *U.S.* 1230, 112 *S.Ct.* 3056, 120 *L.Ed.*2d 921 (1992).

if not ultimately one of total federal preemption." *Id.* at 404, 406, 724 *A.*2d 267.

In the present case, the wisdom of deferring a state judicial decision pending a ruling or definitive regulatory action by the cognizant federal agency is even more evident. Initially, it is significant that the New Jersey ruling under review in this case was made, not by an agency with expertise in practical intricacies respecting interstate vehicular transport of hazardous materials, but by the Tax Court. Competent though it is to make findings of fact and rulings of law in complex matters, that tribunal is not the forum initially best equipped to evaluate which impacts are real and which merely fancied in the world of regulated transport.

Even more importantly, no state court can hope to achieve by itself the objective of uniformity set forth by Congress when it adopted HMTA and HMTUSA. As this opinion is written, there are conflicts in views among courts respecting the burden upon commerce imposed by varying types of state registration fees. *Compare Franks & Son, Inc. v. State of Washington,* 136 *Wash.*2d 737, 966 *P.*2d 1232 (1998), *cert. denied,* —— U.S. ——, 119 *S.Ct.* 1458, 143 *L.Ed.*2d 544, 67 *USLW* 3528, 67 *USLW* 3638, 67 *USLW* 3641 (1999) (charge imposed uniformly upon interstate and intra-state trucks was a fee related to regulation, not a tax, and did not unduly burden interstate commerce), and *New Hampshire Transport v. Flynn,* 751 *F.*2d 43 (1st Cir.1984) (annual fee imposed on all hazardous material and waste transporters held not violative of commerce clause, particularly in light of DOT's power to promulgate regulations as to the manner of assessing fees and even to effectively overrule a court decision deemed improper. Courts are free to encourage application to DOT for "inconsistency ruling" to determine if state fee is preempted and to use "flexible tool" of primary jurisdiction to secure DOT's view), *with American Trucking Associations, Inc. v. Secretary of State,* 595 *A.*2d 1014 (Me. 1991) (flat license fee on all hazardous material carriers violates commerce clause), and *American Trucking Associations v. State of Wisconsin, supra* (As Congress did not determine what fee is

fair, State imposed fee must survive dormant Commerce Clause analysis. Wisconsin fee held to violate Commerce Clause).

While the DOT has been statutorily barred from telling state agencies how much a fee can be, or from defining what it can charge for, 49 *U.S.C.A.* § 5119(c)(1), DOT is plainly *not* barred from ruling on the propriety of fees charged by each state related to regulation of hazardous transport. It is authorized by law to solicit relevant data for this purpose under 49 *U.S.C.A.* § 5125(g)(2), and to respond to requests for rulings propounded by a state agency. DOT can regulate. DOT can rule on individual applications. It can effectively overrule a decision by a state court.

Our conclusion is informed and reinforced by the opinion in *Northwest Airlines, Inc v. Kent County, Michigan, supra,* where the United States Supreme Court, faced with the "reasonableness" test for airport fees contained in the Anti–Head Tax Act (see footnote 3, *supra* ), but without statutory standards to assess "reasonableness", reluctantly undertook the task of measuring reasonableness by using the *Evansville* standards.[10] It also recognized the appropriateness of a referral to the federal DOT under the primary jurisdiction doctrine. *Northwest Airlines, supra,* 510 *U.S.* at 366 n. 10, 114 *S.Ct.* 855.

The Court said:

Courts, we recognize are scarcely equipped to oversee, without the initial superintendence of a regulatory agency, rate structures and practices. *See Colorado Interstate Gas Co. v. FPC,* 324 *U.S.* 581, 589, 65 *S.Ct.* 829, 89 *L.Ed.* 1206 (1945) ("Rate-making is essentially a legislative function."); *cf. Far East Conference v. United States,* 342 *U.S.* 570, 574, 72 *S.Ct.* 492, 96 *L.Ed.* 576 (1952) ("in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over"). (Footnote omitted). The Secretary of Transportation is charged with administering the federal aviation laws, including the AHTA. (Footnote omitted). His Department is equipped, as

---

[10] Unlike a state court or a lower federal court, the United States Supreme Court can undertake such a task secure in the knowledge that its decision must be followed and afforded uniform application in every state.

> courts are not, to survey the field nationwide, and to regulate based on a full view of the relevant facts and circumstances. If we had the benefit of the Secretary's reasoned decision concerning the AHTA's permission for the charges in question, we would accord that decision substantial deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 *U.S.* 837, 842–45, 104 *S.Ct.* 2778, 81 *L.Ed.*2d 694 (1984). Lacking guidance from the Secretary, however, and compelled to give effect to the statute's use of "reasonable," we must look elsewhere.

[*Id.,* 510 *U.S.* at 566–67, 114 *S.Ct.* 1147.]

Finally, we observe that the decision under review, if affirmed, would resolve this essentially federal issue only within the boundaries of this state. Until and unless DOT acts to establish methods of fee imposition deemed fair, New Jersey based hazardous material transporters may well be exposed to non-uniform and arguably improper requirements in other states in which similar issues have either not been addressed or have been judicially resolved in conflicting ways. This does not serve the cause of commerce among the states.

## *Conclusion*

We reverse the grant of summary judgment. We direct the State to apply, on notice to plaintiffs, for a ruling from DOT pursuant to 49 *U.S.C.A.* § 5125(g). While it is preferable, in our view, for that agency to adopt its long overdue regulations in the interest of uniformity, we cannot order that result. The matter is remanded to the Tax Court, which shall retain jurisdiction pending compliance with the directions contained herein. In light of the reversal and remand, and our prior ruling on the State's stay application, we observe that the Tax Court decision is no longer in effect. Fees hereafter collected shall be subject to refund, depending upon the outcome of further proceedings.