752 A.2d 1286

AMERICAN TRUCKING ASSOCIATIONS, INC., A NON–PROFIT CORPORATION, INCORPORATED UNDER THE LAWS OF THE DISTRICT OF COLUMBIA; SUTTLES TRUCK LEASING, INC., AN ALABAMA CORPORATION ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. STATE OF NEW JERSEY, DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

June 20, 2000.

## ORDER

This matter having come before the Court on the grant of interlocutory applications that originally arose from cross-motions for summary judgment in the Tax Court to determine whether the hazardous waste transporter fee imposed by *N.J.A.C.* 7:26–4A.3(g)(1) creates an unconstitutional burden on interstate carriers of hazardous materials, 154 *N.J.* 604, 713 *A.*2d 497 (1998); 324 *N.J.Super.* 1, 734 *A.*2d 314 (App.Div.1999); 162 *N.J.* 124, 741 *A.*2d 93 (1999);

And the Court having determined that there are controverted issues of fact concerning the actual economic impact of the fee on interstate carriers of hazardous materials;

And the Court having further determined that when ultimate constitutional issues are especially fact-sensitive the Court should await, before decision, the presentation of a well-developed record, *State Farm v. State,* 124 *N.J.* 32, 63, 590 *A.*2d 191 (1991); *Roadway Express, Inc. v. Kingsley,* 37 *N.J.* 136, 140, 179 *A.*2d 729 (1962);

And the Court having further determined that such record will better enable the Court to determine the proper role of the United States Department of Transportation under the provisions of the Hazardous Materials Transportation Uniform Safety Act of 1990, now codified in 49 *U.S.C.A.* § 5101 to 5127;

And good cause appearing;

It is ORDERED that the matter is summarily remanded to the Tax Court for a plenary hearing on the allegedly discriminatory economic impact of the hazardous waste transporter fees; and it is further

ORDERED that jurisdiction is otherwise retained; and it is further

ORDERED that on the entry of the Tax Court's opinion and order on remand, the parties shall have twenty-one days each as appellant and respondent, respectively, within which to file briefs and appendices in this Court; and it is further

ORDERED that on the completion of briefing, the Court will determine whether further oral arguments are required.

LONG, J., dissenting.

The majority's disposition of this case confounds the most basic principles of judicial self-restraint by requiring the Tax Court to grapple with the constitutionality of *N.J.A.C.* 7:26–4A.3(9)(1). We have declared the importance of avoiding unnecessary constitutional questions on numerous occasions. *See, e.g., Donadio v. Cunningham,* 58 *N.J.* 309, 325–26, 277 *A.2d* 375 (1971) (citing *Ahto v. Weaver,* 39 *N.J.* 418, 428, 189 *A.2d* 27 (1963)); *State v. Zucconi,* 50 *N.J.* 361, 364, 235 *A.2d* 193 (1967); *State v. Salerno,* 27 *N.J.* 289, 296, 142 *A.2d* 636 (1958); *State v. Fair Lawn Serv. Ctr.,* 20 *N.J.* 468, 470–71, 120 *A.2d* 233 (1956) (citing *Michaelson v. Township of Wall,* 92 *N.J.L.* 72, 108 *A.* 145 (Sup.Ct.1918)); *Grobart v. Grobart,* 5 *N.J.* 161, 165, 74 *A.2d* 294 (1950). Indeed, in *O'Keefe v. Passaic Valley Water Comm.,* 132 *N.J.* 234, 241–42, 624 *A.2d* 578 (1993), we explained the roots of the doctrine:

This maxim, which has long been a part of our jurisprudence, *see State v. Corson,* 67 *N.J.L.* 178, 187[, 50 *A.* 780] (Sup.Ct.1901), remains vibrant today. *See, e.g.,* John Paul Stevens, *The Bill of Rights: A Century of Progress,* 59 *U. Chi. L.Rev.* 13, 37 (1992) (stating that doctrine of judicial restraint obliges federal judges to avoid "unduly expansive constitutional adjudication") (citing John Paul Stevens, *Judicial Restraint,* 22 *San Diego L.Rev.,* 437, 446 (1985)). It derives from the "policy of strict necessity in disposing of constitutional issues," *Rescue Army v. Municipal Court,* 331 *U.S.* 549, 568, 67 *S.Ct.* 1409, 1419, 91 *L.Ed.* 1666, 1678 (1947); *see also Burton v. United States,* 196 *U.S.* 283, 295, 25 *S.Ct.* 243, 245, 49 *L.Ed.* 482, 485–86

(1905) (stating that United States Supreme Court will not decide constitutional issue unless absolutely necessary to disposition of case), and "draws support from Chief Justice Marshall's rationale of judicial review as a reluctant power exercised only because the Court must decide cases brought before it in conformity with the Constitution." Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law,* 2.13(g) at 240 (2d ed.1992) (citing *Marbury v. Madison,* 5 *U.S.* (1 Cranch) 137, 2 *L.Ed.* 60 (1803)). Consistent with this precept, the United States Supreme Court " 'avoid[s] passing upon a large part of all the constitutional questions pressed upon it for decision.' " *Rescue Army, supra,* 331 *U.S.* at 568–69, 67 *S.Ct.* at 1419, 91 *L.Ed.* at 1678 (citing *Ashwander v. Tennessee Valley Auth.,* 297 *U.S.* 288, 346, 56 *S.Ct.* 466, 482, 80 *L.Ed.* 688, 720 (Brandeis, J., concurring), *reh'g denied,* 297 *U.S.* 728, 56 *S.Ct.* 588, 80 *L.Ed.* 1011 (1936)). See Laurence H. Tribe, *American Constitutional Law* § 3–8 at 71–72 (2d ed.1988) (explaining that over time Supreme Court developed variety of means to avoid rendering decision on most constitutional issues it encounters).

The policy considerations underlying the avoidance of constitutional questions are a respect for other branches and levels of government, an awareness of the limitations of judicial power, sensitivity to the burdens of a constitutional adjudication, and appreciation that others may provide a more useful answer. *See Rescue Army, supra,* 331 *U.S.* at 571, 67 *S.Ct.* at 1421, 91 *L.Ed.* at 1679 (stating policy reasons for avoiding constitutional questions).

Given those tenets, the majority's choice to adjudicate a constitutional claim is inexplicable.

Congress has enacted the Hazardous Materials Transportation Act (HMTA), and denominated the United States Department of Transportation (USDOT) as the appropriate agency for resolving issues like the one before us. 49 *U.S.C.A.* § 5125(g).[1] The HMTA grants a state the authority to "impose a fee related to transporting hazardous material only if the fee is fair and used for a purpose related to transporting hazardous material." 49 *U.S.C.A.* § 5125(g)(1). A challenged fee is thus subject to a "fairness hearing" in which the Secretary of Transportation is presented with the basis on which the fee is levied upon persons involved in such transportation; the purposes for which the revenues from the fee are used; the annual total amount of the revenues collected from the fee; and such other matters as the Secretary requests. 49 *U.S.C.A.* § 5125(g)(2). From that evi-

---

[1] In 1990, significant amendments were passed to the HMTA. Those amendments are referred to as the Hazardous Materials Transportation Uniform Safety Act of 1990 (HMTUSA), Pub.L. No. 101–615, 104 Stat. 3244 (1990).

dence, the Secretary determines whether the fee complies with the fairness mandate of 49 *U.S.C.A.* § 5125(g)(1). One obvious point of the congressional action in enacting the HMTA was to obtain uniform results in cases like this one. That goal is entirely subverted by the majority's ruling.

Last year, the USDOT struck down a Tennessee regulation similar to *N.J.A.C.* 7:26–4A.3(9)(1) on "fairness" grounds. *Tennessee Hazardous Waste Transporter Fee and reporting Requirements,* 64 *Fed.Reg.* 54473–54481 (October 6, 1999). In doing so, it applied commerce clause standards to invalidate a Tennessee requirement that waste transporters obtain a permit by paying a flat annual fee unrelated to payor's level of business activity. Like the Appellate Division, I would defer to the USDOT for a determination of the fairness issue. The constitutional question is premature at best, and may be avoided altogether based on a determination by the USDOT. In the process, the congressional aim of a uniform approach to the difficult issue presented here will be realized. If, as the majority holds, there is need for further development of this record, it should occur in the agency tapped by Congress for this purpose, with expertise and experience in the field—the USDOT.

In short, I would affirm based upon the thoughtful and thorough opinion of Judge Landau, writing for the Appellate Division.

Justice VERNIERO joins in this opinion.

*For remandment*—Chief Justice PORTIZ and Justices O'HERN, STEIN and COLEMAN—4.

*For affirmance*—Justices LONG and VERNIERO—2.