ENERGY COMPLEXES, INC., Plaintiff-Appellant,

v.

EAU CLAIRE COUNTY, Defendant-Respondent-Petitioner.

Supreme Court

*No. 88–0303. Argued October 4, 1989.—Decided December 20, 1989.*

(Also reported in 449 N.W.2d 35.)

For the defendant-respondent-petitioner there were briefs by *James E. Garvey, Carol S. Dittmar,* and *Garvey, Anderson, Kelly & Ryberg, S.C.,* Eau Claire, and oral argument by *James E. Garvey.*

For the plaintiff-appellant there was a brief by *Thomas D. Bell* and *Doar, Drill & Skow, S.C.,* New Richmond, and oral argument by *Mr. Bell.*

CALLOW, WILLIAM G., J. This is a review of an unpublished per curiam decision of the court of appeals, filed on November 8, 1988, reversing a judgment entered by the circuit court for Eau Claire county, Judge William D. O'Brien, and remanding the cause for further proceedings. The circuit court granted Eau Claire county's

motion for summary judgment and dismissed the action brought by Energy Complexes, Inc. against Eau Claire county. The court of appeals, concluding that summary judgment had been improperly granted, reversed the circuit court's judgment dismissing the complaint of Energy Complexes, Inc. and remanded the matter for further proceedings.

There are two issues before this court: first, whether Energy Complexes, Inc.'s lawsuit against Eau Claire county is barred by either common-law immunity or statutory immunity under sec. 893.80(4), Stats.; second, if neither common-law nor statutory immunity bars Energy Complexes, Inc.'s lawsuit, whether a disputed issue as to any material fact exists, making it improper for the circuit court to have granted Eau Claire county's motion for summary judgment. We conclude that neither common-law immunity nor statutory immunity under sec. 893.80(4) bars the lawsuit of Energy Complexes, Inc., and that Eau Claire county's motion for summary judgment should not have been granted because a disputed issue of material fact exists. We therefore affirm the decision of the court of appeals that reversed the judgment of the circuit court and remanded the matter for further proceedings.

On April 12, 1983, Eau Claire county (the County) and Energy Complexes, Inc. (ECI) entered into a contract. The contract required ECI to construct, own, and operate a waste-to-energy plant in the city of Eau Claire. The contract required the County to supply the plant with enough waste to make the plant economically feasible and to deliver and sell the steam generated by the plant.

The waste-to-energy project described in the contract would be implemented in three phases: the preconstruction financing and planning phase, the construction

phase, and the operations phase. In the preconstruction financing and planning phase, ECI was to, among other things, complete the design for the plant, obtain financing and the necessary permits and licenses, and finalize the "tipping fee."[1] The County's approval of the tipping fee would mark the commencement of the construction phase. The contract required ECI to complete the preconstruction and construction phases within thirty-six months of the execution of the contract.[2] The operations phase was to continue for a twenty-year period, commencing the day the plant became operational.

The dispute between the County and ECI primarily concerns two provisions of the contract: Article IX, section 3, and Article XIV. Article IX, section 3, which required the County to reimburse ECI for certain costs[3] if the County terminated the contract after approving the tipping fee but before the commencement of construction, provides as follows:

> *County Termination of Agreement Before Construction.* If ECI shall meet the tipping fee requirements herein and should the County, for any reason whatsoever, except for ECI's breach of this contract, seek to terminate this Agreement after it has given its approval to ECI relative to the tipping fee, but before construction has commenced, it shall be granted that

---

[1] The definition of "tipping fee," set forth in Article VI of the contract, is the "fee collected at the gate of the facility which shall include $5.00 (in 1985 dollars) as a surcharge for operation of the County Landfill."

[2] The contract also provided that ECI "shall use its best efforts, but shall not be deemed contractually bound," to complete the preconstruction and construction phases within twenty-four months of the execution of the contract.

[3] We hereinafter refer to these costs as "preconstruction costs."

option, subject to the qualification that it pay to ECI all costs incurred in the course of pursuing its responsibilities incurred after the signing of this contract but not to include court costs or attorney's fees.

Article XIV, which made any obligation of the County contingent upon the County reaching agreements with Pope and Talbot, Inc. (Pope and Talbot) and the city of Chippewa Falls (Chippewa Falls), provides as follows:

*Other Pending Agreements.* Any obligations of Eau Claire County shall be contingent upon consummated agreements between Eau Claire County and Pope and Talbot, Inc. for sale and delivery of steam and between the County and the City of Chippewa Falls for delivery of 25 tons per day of refuse.

ECI met the tipping fee requirements mentioned in Article IX, section 3, shortly after the parties signed the contract, and the tipping fee was approved by the County.

The County Board of Supervisors for Eau Claire County considered proposed contracts with Pope and Talbot and Chippewa Falls at three County Board meetings. In the end, a resolution regarding the approval of these proposed contracts and a substitute amendment to this resolution as amended were defeated, thus these proposed contracts were never approved. Apparently, after the August 7, 1984 meeting of the County Board, which was the final meeting at which the proposed contracts were considered, the County made no further efforts to reach agreements with Pope and Talbot and Chippewa Falls.

On February 7, 1986, ECI commenced a lawsuit against the County in the circuit court for Eau Claire county. The complaint contained four causes of action:

two based upon breach of contract;[4] one based upon promissory estoppel; and one based upon quantum meruit.

On August 21, 1987, the County moved for summary judgment. ECI opposed this motion. In support of their positions, the parties filed briefs and affidavits. The circuit court granted the County's motion for summary judgment and dismissed ECI's complaint.

In its memorandum opinion and order for summary judgment, dated December 15, 1987, the circuit court set forth its rationale for granting the County's motion for summary judgment. The circuit court first discussed Article XIV, the provision stating that any obligations of the County were contingent upon consummated agreements with Pope and Talbot and Chippewa Falls. The circuit court determined that Article XIV was unambiguous; therefore, the court found it unnecessary to consider extrinsic evidence to interpret the contract. According to the circuit court, because Article XIV stated that any obligation of the County was contingent upon the consummated agreements with Pope and Talbot and Chippewa Falls and because these agreements were never consummated, the County was not liable for the preconstruction costs of ECI.

Moreover, the circuit court determined that, because the County Board of Supervisors exercised a legislative function in rejecting the proposed contracts with Pope and Talbot and Chippewa Falls, the County was immune from ECI's lawsuit under sec. 893.80(4), Stats.[5]

---

[4] In a stipulation filed on September 14, 1987, the parties agreed to the dismissal of ECI's first cause of action, one of the breach of contract claims.

[5] Section 893.80(4), Stats., provides, in part, as follows:

No suit may be brought against any . . . political corporation, gov-

459

The court of appeals reversed the judgment of the circuit court and remanded the matter for further proceedings. The court of appeals analyzed both Article XIV and Article IX, section 3. Again, Article IX, section 3, provided that the County had to reimburse ECI for the preconstruction costs if the County terminated the contract after approving the tipping fee but before the commencement of construction. The court of appeals concluded that there was a disputed issue of material fact, reasoning as follows:

> We conclude that Articles IX and XIV create an ambiguity on the county's liability that the affidavits and depositions on summary judgment did not eliminate. When read together, Articles IX and XIV do not conclusively show that the parties intended Article XIV to absolve the county of its obligations to indemnify ECI for its costs Article IX would otherwise impose. Further, the affidavits the county submitted contain no extrinsic evidence that the parties intended Article XIV to limit the county's obligations to indemnify ECI under Article IX. This factual dispute required further proceedings for resolution.

The court of appeals also addressed the issue of the County's immunity from ECI's lawsuit under sec. 893.80(4), Stats. The court of appeals concluded that sec. 893.80(4) applies only to lawsuits based in tort. Because ECI's lawsuit involved an alleged breach of contract, the court of appeals reasoned that sec. 893.80(4) did not immunize the County's conduct.[6]

ernmental subdivision or any agency thereof . . . for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

[6] The court of appeals also held that on remand the trial court should determine whether the County violated an implied

■
We begin our analysis by stating the principles that govern in summary judgment cases. Section 802.08(2), Stats., provides, in part, that summary judgment shall be rendered when it is clear that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Grams v. Boss,* 97 Wis. 2d 332, 294 N.W.2d 473 (1980), this court set forth the procedure courts should follow in deciding whether it is appropriate to render summary judgment:

> The court must initially examine the pleadings to determine whether a claim has been stated and whether a material issue of fact is presented. If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's . . . affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. If the moving party has made a *prima facie* case for summary judgment, the court must examine the affidavits and other proof of the opposing party . . . to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial.

> On summary judgment the moving party has the burden to establish the absence of a genuine, that is, disputed, issue as to any material fact. On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact. A

contractual obligation of good faith to ECI by failing to consummate agreements with Pope and Talbot and Chippewa Falls.

461

summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy; some courts have said that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment.

The papers filed by the moving party are carefully scrutinized. The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. If the movant's papers before the court fail to establish clearly that there is no genuine issue as to any material fact, the motion will be denied. If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment.

*Id.* at 338–39 (citations omitted). We now apply the procedure set forth in *Grams* to the facts of this case to determine whether it was proper for the circuit court to grant the County's motion for summary judgment.

■ Under the procedure set forth in *Grams,* the first issue this court must address is whether the complaint can survive a sec. 802.06(2)(f), Stats., motion to dismiss for failing to state a claim upon which relief can be granted. In *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 275 N.W.2d 660 (1979), this court discussed the test that is applied in analyzing such motions:

For the purpose of testing whether a claim has been stated pursuant to a motion to dismiss under sec. 802.06(2)(f), Stats., the facts pleaded must be taken

as admitted. The purpose of the complaint is to give notice of the nature of the claim; and, therefore, it is not necessary for the plaintiff to set out in the complaint all the facts which must eventually be proved to recover. The purpose of a motion to dismiss for failure to state a claim is the same as the purpose of the old demurrer—to test the legal sufficiency of the claim. Because the pleadings are to be liberally construed, a claim should be dismissed as legally insufficient only if "it is quite clear that under no conditions can the plaintiff recover." Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801-803,* 59 Marq. L. Rev. 1, 54 (1976). The facts pleaded and all reasonable inferences from the pleadings must be taken as true, but legal conclusions and unreasonable inferences need not be accepted.

Section 802.06(2)(f), Stats., . . . is similar to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A claim should not be dismissed under the Wisconsin rule or the federal rule unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations.

*Id.* at 731-32 (citations omitted).

This court has held that the complaint fails to state a claim upon which relief may be granted if the defendant is immune from liability for the activity alleged in the complaint. *See, e.g., C.L. v. Olson,* 143 Wis. 2d 701, 706-07, 422 N.W.2d 614 (1988).[7] In the case at hand, the

---

[7] *See also* 2A *Moore's Federal Practice,* para. 12.07[2.-5], pp. 12-68 to 12-69 (2d ed. 1989) ("A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of a defendant . . .."); 5 Wright & Miller, *Federal Practice and Procedure: Civil,* sec. 1357, pp. 608-09 (1969) ("Other affirmative defenses that have been considered on a motion to dismiss include . . . immunity.").

County insists that it is immune from liability for the activity alleged in ECI's complaint. The County contends that local government bodies enjoy common-law immunity for discretionary acts and statutory immunity under sec. 893.80(4), Stats., for legislative, quasi-legislative, judicial, and quasi-judicial acts.[8] The County asserts that the common-law and the statutory immunity apply to tort and contract claims. Arguing that ECI's breach of contract lawsuit is based upon the County's discretionary decisions not to enter into contracts with Pope and Talbot and Chippewa Falls, the County insists that the common law and sec. 893.80(4) shield it from ECI's lawsuit. ECI, on the other hand, claims that local government bodies have no common-law immunity or statutory immunity under sec. 893.80(4) from breach of contract lawsuits. Moreover, ECI argues that, even if there is a common-law or statutory basis for immunity from breach of contract lawsuits, the County is not immune from this lawsuit because the lawsuit is not based upon the County's discretionary decisions.

We conclude that neither the common law nor sec. 893.80(4), Stats., immunize the County from ECI's breach of contract lawsuit, even if the contract was terminated because of legislative acts occurring after the contract was signed. The County is correct that at common law a local government body was immune from *tort liability* for its "discretionary" decisions. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 648–50 (1980); 18 McQuillin, *Municipal Corporations,* sec. 53.04a, pp.

---

[8] This court has noted that legislative, quasi-legislative, judicial, or quasi-judicial acts are "essentially equivalent" to discretionary acts. *C.L. v. Olson,* 143 Wis. 2d at 716 n. 9.

157–58 (3d ed. 1984). But the common law did not shield local government bodies from breach of contract actions:

> [I]t is established that, if a contract has been violated by the municipality, the other party thereto may at once sue to recover damages for its breach, or to recover the amount due thereon in the same manner as though the contract had been made with an individual, firm or private corporation.

10 McQuillin, *Municipal Corporations,* sec. 29.124, p. 560 (3d ed. 1981). *See also* 1 J. Dillon, *Law of Municipal Corporations,* sec. 394, p. 387 (1872) ("But with respect to authorized contracts a municipal corporation has the same rights and remedies; and is bound thereby, and may be sued thereon in the same manner as individuals."); 1A Antieau, *Municipal Corporation Law,* sec. 10.67, p. 10–154 (1987) ("Local governments are obligated on their contracts the same as private persons and possess no legal immunity when they commit breaches of contract.").

■ Section 893.80(4), Stats., does not apply to suits involving a local government body's contractual obligations. The County concedes that when sec. 893.80(4) was originally enacted, it only applied to tort actions. The County argues, however, that sec. 893.80(4) was made applicable to all actions, including contract actions, by amendments in Chapter 285, Laws of 1977. The County's argument must fail in light of the legislative history behind these 1977 amendments. The prefatory note to Chapter 285, Laws of 1977, shows that the intent of the legislature was merely to consolidate and make uniform the statutory procedures for commencing claims against local government entities. We recognized that

this was the effect of the 1977 changes in *Figgs v. City of Milwaukee,* 121 Wis. 2d 44, 52, 357 N.W.2d 548 (1984):

> Sec. 893.80, when initially enacted by the legislature, applied only to tort claims, but, by ch. 285, Laws of 1977, the *procedures* were made generally applicable to any claims against the listed governments.

(Emphasis added.) We find no indication that the legislature intended, in making the 1977 changes, to extend the applicability of the immunity provision, sec. 894.80(4), to contract suits.[9]

Because we conclude that neither the common law nor sec. 893.80(4), Stats., stand as a bar to ECI's breach of contract lawsuit, the procedure for evaluating summary judgment motions requires us to examine the pleadings to determine whether a material issue of fact is presented. An examination of the pleadings shows that several factual issues exist. Looking at the second cause of action alone, an issue of fact exists as to whether the parties intended that the County's failure to consummate agreements with Pope and Talbot and Chippewa Falls would absolve the County of any obligation regarding the payment of ECI's preconstruction costs.

Having concluded that the pleadings show the existence of factual issues, we examine the material presented on the motion for summary judgment to determine whether there is a disputed issue as to any material fact. The court must deny a motion for summary judgment if it finds a disputed issue as to any material fact. In summary judgment cases involving contract claims,

---

[9] This court's decision in *Felder v. Casey,* 139 Wis. 2d 614, 408 N.W.2d 19 (1987), *rev'd,* 487 U.S. 131 (1988), provides no support for the County's argument.

this court has held that summary judgment should not be granted when the contract is ambiguous and the intent of the parties to the contract is in dispute. *Riley Construction Co. v. Schillmoeller & Krofl Co.*, 70 Wis. 2d 900, 908, 236 N.W.2d 195 (1975).

The County argues that Article XIV is unambiguous and that no ambiguity is created when Article XIV and Article IX, section 3, are read together. According to the County, Article XIV clearly relieves the County of all liability to ECI because the contracts with Pope and Talbot and Chippewa Falls were never consummated. The County thus asserts that, because the contract is unambiguous, it was improper for the court of appeals to examine extrinsic evidence in the affidavits. ECI, on the other hand, agrees with the holding of the court of appeals that Article XIV and Article IX, section 3, create an ambiguity with respect to the County's liability for ECI's preconstruction costs and that the affidavits did not eliminate the ambiguity, leaving the intent of the parties in dispute.

We find that the contract between the County and ECI is ambiguous. In *Wausau Underwriters v. Dane County*, 142 Wis. 2d 315, 417 N.W.2d 914 (Ct. App. 1987), the court of appeals stated the method for determining whether a contract is ambiguous:

> Whether a contract is ambiguous is itself a question of law which an appellate court decides independently of the trial court's decision. A document is ambiguous if it is reasonably susceptible to more than one meaning.

*Id.* at 322 (citations omitted). In this case, Article XIV states that any obligation of the County is contingent upon consummated agreements with Pope and Talbot

and Chippewa Falls. Article IX, section 3, states that the County could terminate the agreement for any reason whatsoever after the tipping fee had been approved but before the commencement of construction as long as the County paid ECI for the preconstruction costs. Article XIV, standing alone, appears to prevent ECI from obtaining payment from the County for the preconstruction costs because this provision makes "any obligation" of the County contingent upon consummated agreements with Pope and Talbot and Chippewa Falls. However, Article IX, section 3, makes the County liable for ECI's preconstruction costs if the County decides to terminate the agreement for "any reason whatsoever," including, arguably, the situation where the County terminates the agreement because the contracts with Pope and Talbot and Chippewa Falls could not be consummated. Thus, the contract is ambiguous because one provision appears to obligate the County to pay ECI for the preconstruction costs, while another appears to relieve the County of this obligation.

Once a contract is found to be ambiguous, extrinsic evidence can be considered in order to determine the parties' intent. *Capital Investments v. Whitehall Packing Co.,* 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979). However, on summary judgment the court does not decide an issue of fact; a court merely decides whether there is a disputed issue of fact. *Grams,* 97 Wis. 2d at 338. In this case, therefore, we do not examine the extrinsic evidence contained in the affidavits to determine the true intent of the parties at the time the agreement was entered into; rather, we examine this extrinsic evidence to determine whether the intent of the parties is in dispute. After reviewing the extrinsic evidence contained in the affidavits, it is clear that the intent of the

parties is in dispute.[10] Thus, because our review of the affidavits and other material provided on summary judgment show that the contract is ambiguous and that the intent of the parties to this contract is disputed, we conclude that the County's motion for summary judgment should have been denied.

In conclusion, we hold that neither common-law immunity nor statutory immunity under sec. 893.80(4), Stats., bars ECI's lawsuit and that the County's motion for summary judgment should have been denied because the contract is ambiguous and the intent of the parties to the contract is disputed. The trial court must conduct further proceedings to resolve this factual dispute. Moreover, as noted by the court of appeals, the trial court

---

[10] In support of its motion for summary judgment, the County submitted the affidavits of Attorney James E. Garvey and Ronald Wampler, County Administrator for Eau Claire County. Wampler's affidavit states that, under Article XIV, the County had absolutely no obligation to ECI if the agreements with Pope and Talbot and Chippewa Falls were not consummated and that such contracts were never consummated. In opposition to the County's motion for summary judgment, ECI submitted the affidavits of Robert Hoff, President of ECI, and Attorney Thomas D. Bell. Hoff's affidavit states that Article XIV relieved the County of any obligation to guarantee a supply of waste and steam revenue if the agreements with either Pope and Talbot or Chippewa Falls could not be consummated; Article XIV was not meant to relieve the County of its responsibility to reimburse ECI for preconstruction costs in the event that these agreements could not be consummated. Moreover, Bell's affidavit and the attached deposition of John Boe contain evidence that Article XIV relieved the County of its obligation to pay ECI's preconstruction costs if either Pope and Talbot or Chippewa Falls refused to come to terms with the County but not if the County refused to come to terms with either group on the ground that the County no longer wanted the waste-to-energy plant built.

must address ECI's claims for promissory estoppel and quantum meruit if it is found that Article XIV relieves the County of liability to ECI for ECI's preconstruction costs.

*By the Court.*—The decision of the court of appeals is affirmed.