COURT OF APPEALS
DECISION
DATED AND FILED

June 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP884**

STATE OF WISCONSIN

Cir. Ct. No. 2022PR275

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE ESTATE OF MILTON S. KUENZI:

DANIEL KIERSTEN,

APPELLANT,

V.

RUSSELL G. KUENZI,

RESPONDENT.

---

APPEAL from an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Reversed and cause remanded for further proceedings*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daniel Kiersten and Milton Kuenzi executed a written agreement ("the Agreement") in which Kiersten promised to provide caretaking services for Kuenzi, and, as pertinent here, Kuenzi promised to give title to his house to Kiersten when Kuenzi died. Kiersten provided caretaking services to Kuenzi for approximately five months, then terminated the Agreement. When Kuenzi died over six years later, Kiersten filed a claim against Kuenzi's estate ("the Estate"), alleging that the title to Kuenzi's house should be transferred to Kiersten pursuant to the Agreement.[1] The Estate objected to Kiersten's claim, arguing that Kuenzi's promise to give title to his house to Kiersten is unenforceable because it was a promise to make a future gift, or in the alternative, it lacked sufficient consideration. The Estate also contended that the claim is time barred. Kiersten argued that Kuenzi's promise is enforceable because it constituted a promise to Kiersten in consideration for Kiersten's promise to provide caretaking services to Kuenzi. The circuit court granted summary judgment in favor of the Estate, concluding that Kuenzi's promise to give title to his house to Kiersten on Kuenzi's death is unenforceable because the promise was a future gift to Kiersten rather than in consideration for Kiersten's promise to provide caretaking services.

¶2 On appeal, both Kiersten and the Estate argue that the Agreement is unambiguous and that summary judgment should be granted in their favor. In the alternative, the Estate argues that the Agreement fails to satisfy WIS. STAT. § 706.02 (2023-24), the statute of frauds for transactions affecting land.[2] We

---

[1] Russell Kuenzi, Milton Kuenzi's son, is the personal representative of his father's estate and the trustee of his father's trust. Although Russell is named as the respondent in this case, we refer to the respondent as "the Estate" for ease of reference.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

conclude that summary judgment is not appropriate in favor of the Estate or in favor of Kiersten because the Agreement is ambiguous as to whether Kuenzi's promise to give title to his house to Kiersten was an unenforceable future gift or was an enforceable promise provided in consideration for Kiersten's promised caretaking services. The extrinsic evidence submitted by each party in the circuit court proceedings to support their respective positions does not resolve this ambiguity, but instead underscores the existence of a genuine dispute of material fact regarding that issue. We also reject the Estate's argument that the Agreement fails to satisfy the statute of frauds. Accordingly, we reverse the circuit court's grant of summary judgment in favor of the Estate, and we remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3      There is no dispute as to the following material facts.

¶4      Kiersten is the son-in-law of Kuenzi's deceased wife. On April 6, 2016, Kiersten and Kuenzi signed the Agreement. In the Agreement, Kiersten promised to provide a variety of caretaking services for Kuenzi due to Kuenzi's age, including assistance with Kuenzi's transportation, daily activities, medical care, personal hygiene, and nutrition. The Agreement stated that Kiersten would provide these caretaking services for the remainder of Kuenzi's lifetime, although either party had the option to "unilaterally terminate" the Agreement with 60 days' written notice to the other party.

¶5      Kuenzi also made promises to Kiersten in the Agreement. First, Kuenzi promised to pay Kiersten a "one-time upfront payment of $191,000," which would be paid on the day that Kiersten began providing caretaking services. The Agreement said that "[t]his sum … is considered to be a gift by both

[Kiersten] and [Kuenzi]." Second, Kuenzi promised to include a provision in his estate planning documents providing, in pertinent part, that on his death, Kiersten would receive title to Kuenzi's house. The Agreement stated that "this gift should be considered to be a death-time bequest from [Kuenzi] to [Kiersten]." The Agreement provided that both the cash amount and the transfer of the house title would "remain in effect" if either party terminated the Agreement. The Agreement also stated that Kiersten and Kuenzi made these promises to one another "as a matter of love and affection."

¶6      After signing the Agreement, Kuenzi revised his revocable trust, in pertinent part, to give title to his house to Kiersten on Kuenzi's death. On May 6, 2016, Kiersten moved from Colorado to Wisconsin and began providing caretaking services to Kuenzi. Kuenzi paid Kiersten the promised $191,000 at that time.

¶7      On July 27, 2016, Kiersten provided written notice to Kuenzi that he was terminating the Agreement and that he would stop providing caretaking services in 60 days. Kiersten said that he needed to return to Colorado to address issues regarding the sale of his house. On September 26, 2016, Kiersten stopped providing caretaking services and moved back to Colorado. Soon thereafter, Kuenzi revoked the provision in his revocable trust that would have transferred title to his house to Kiersten on Kuenzi's death.

¶8      Kuenzi died in September 2022. Kiersten filed a claim against the Estate, asserting that Kuenzi had promised to give Kiersten title to Kuenzi's house on Kuenzi's death. The Estate objected to Kiersten's claim. Both parties moved for summary judgment regarding the enforceability of Kuenzi's house-related promise. The Estate argued that Kuenzi's house-related promise is not

enforceable because it was a promise to make a future gift. In the alternative, the Estate argued that the Agreement was unsupported by sufficient consideration and is also unenforceable under WIS. STAT. § 706.02, the statute of frauds for transactions affecting land. Kiersten argued that Kuenzi's promise is enforceable because it was given in consideration for Kiersten's promise to provide caretaking services. Kiersten also argued that the statute of frauds does not apply to the Agreement.

¶9      The circuit court granted summary judgment in favor of the Estate, concluding that Kuenzi's house-related promise is an unenforceable gift. The court interpreted the Agreement as unambiguously creating three independent and unrelated promises: (1) Kuenzi's promise to give Kiersten $191,000, which was a gift to Kiersten and was not given as consideration for Kiersten's caretaking services; (2) Kuenzi's promise to give title to his house to Kiersten, which was also a gift to Kiersten and was not offered as consideration for Kiersten's caretaking services; and (3) Kiersten's promise to provide caretaking services to Kuenzi, which was a promise made in exchange for only "love and affection." Because Kuenzi's house-related promise was a gift and was not given as consideration for Kiersten's promise to provide caretaking services, the court concluded that Kuenzi's promise lacked consideration. Kiersten appeals.

## DISCUSSION

¶10      The issue presented on appeal is whether summary judgment should be granted in either party's favor. This determination requires us to consider whether Kuenzi's house-related promise, as described in the Agreement, was intended by the parties as a future gift to Kiersten or was provided in consideration for Kiersten's promise to provide caretaking services. If Kuenzi's house-related

5

promise was a gift, then, as explained below, it is an unenforceable promise; if this promise was consideration for Kiersten's promised caretaking services, then it is an enforceable promise. We also address the Estate's argument that the Agreement fails to satisfy the statute of frauds.

¶11 For the following reasons, we conclude that the Agreement is ambiguous as to whether Kuenzi's house-related promise was a gift or provided in consideration for Kiersten's caretaking services, and we conclude that the extrinsic evidence leaves a genuine dispute of material fact as to the nature of Kuenzi's promise. As a result, we conclude that neither party's motion for summary judgment should be granted. We also reject the Estate's alternative argument that the Agreement fails to satisfy the statute of frauds. Therefore, we reverse the circuit court's order and remand for further proceedings consistent with this opinion.

## I.  Standard of Review for Summary Judgment and Contract Interpretation

¶12 We review a circuit court's decision granting or denying summary judgment independently, but we apply the same methodology as the court. *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶14, 281 Wis. 2d 448, 699 N.W.2d 54. On summary judgment, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "The purpose of the summary judgment procedure is not to try issues of fact but to avoid trials where there is nothing to try." *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981).

¶13    In reviewing the parties' motions for summary judgment, we apply the following methodology.[3]  We consider the moving party's affidavits or other proof to determine whether the moving party has made a prima facie case for summary judgment under WIS. STAT. § 802.08(2).  *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983).  If the moving party has made a prima facie case for summary judgment, we examine "the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary."  *Id.*

¶14    "A factual issue is 'genuine' if the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party."  *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶32, 236 Wis. 2d 435, 613 N.W.2d 142.  "A 'material fact' is one that impacts the resolution of the controversy."  *Id.*  When determining whether there is a "genuine issue as to any material fact," the affidavits and other proof submitted by the parties are viewed "in the light most favorable to the nonmoving party."  *Mrozek*, 281 Wis. 2d 448, ¶14 (citation omitted).

¶15    In this matter, each party has moved for summary judgment, but that does not require us to grant summary judgment to either party.  "When confronted with cross-motions for summary judgment, the reviewing court must rule on each

---

[3] The initial step in summary judgment methodology is to examine the pleadings to determine whether a claim for relief is stated and whether a material issue of fact is presented. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983).  Here, the parties do not dispute that this step has been satisfied.

7

party's motion on an individual basis." ***American Trucking Assocs., Inc. v. State***, 205 Wis. 2d 494, 499 n.4, 556 N.W.2d 761 (Ct. App. 1996). "Each motion must be denied if material factual issues exist as to the motion." ***Id.***

¶16    This appeal also requires us to interpret the language of the Agreement. "The interpretation of a contract is a question of law that we review independently of the circuit court." ***BV/B1, LLC v. InvestorsBank***, 2010 WI App 152, ¶19, 330 Wis. 2d 462, 792 N.W.2d 622. "The primary goal in contract interpretation is to give effect to the parties' intentions." ***Seitzinger v. Community Health Network***, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. "We ascertain the parties' intentions by looking to the language of the contract itself," and we interpret the language "consistent with what a reasonable person would understand the words to mean under the circumstances." ***Id.*** We interpret specific provisions of a contract in the context of the contract as a whole. ***Little Chute Area Sch. Dist. v. Wisconsin Educ. Ass'n Council***, 2017 WI App 11, ¶25, 373 Wis. 2d 668, 892 N.W.2d 312.

¶17    Whether a contract is ambiguous is a question of law that we review de novo. ***Chapman v. B.C. Ziegler & Co.***, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. A contract is ambiguous when its terms are "reasonably susceptible to more than one interpretation." ***BV/B1***, 330 Wis. 2d 462, ¶19. If the contract is unambiguous, "we construe the contract as it stands and apply its literal meaning." ***Id.*** If the contract is ambiguous, we may "look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent." ***Town Bank v. City Real Est. Dev., LLC***, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476. Extrinsic evidence may include "the conduct of the parties and the negotiations which took place, both before and after the execution of the documents, and … all related documents of the parties." ***Kernz v. J.L. French***

*Corp.*, 2003 WI App 140, ¶10, 266 Wis. 2d 124, 667 N.W.2d 751 (citation omitted). The meaning of an ambiguous contract is a question of fact. *Town Bank*, 330 Wis. 2d 340, ¶32.

¶18 When interpreting a contract in the context of a summary judgment motion, summary judgment should not be granted if the "contract is ambiguous and the intent of the parties to the contract is in dispute." *Energy Complexes, Inc. v. Eau Claire County*, 152 Wis. 2d 453, 466-67, 449 N.W.2d 35 (1989). In other words, summary judgment is not appropriate if: (1) material language in the contract is susceptible to more than one reasonable interpretation; and (2) the extrinsic evidence submitted by the parties demonstrates that there is a genuine dispute of fact regarding the parties' intent. *Id.* at 468-69.

## II. The Agreement is Ambiguous

¶19 The first issue is whether Kuenzi's house-related promise, as stated in the Agreement, is enforceable. We conclude that summary judgment is not appropriate here because the Agreement is ambiguous as to whether Kuenzi's promise was a future gift to Kiersten, and therefore not enforceable, or whether that promise was given in consideration for Kiersten's promise to provide caretaking services, and therefore enforceable. Further, the extrinsic evidence produced by each party in the circuit court proceedings shows a genuine dispute of material fact regarding the intent of each of the parties on this issue.

¶20 The three elements of an enforceable contract are offer, acceptance, and consideration. *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶20, 362 Wis. 2d 100, 862 N.W.2d 879. Here, there is no dispute that Kuenzi's house-related promise was offered and accepted, so we focus on whether that promise was supported by consideration. One way for a contract to be supported by

9

consideration is if there is an "exchange of promises"—*i.e.*, one party's promise is given in exchange for the other party's promise. *Id.*, ¶21. Mutually exchanged promises will constitute sufficient consideration even if the benefits or detriments to the parties are not equal in value. *Levin v. Perkins*, 12 Wis. 2d 398, 403, 107 N.W.2d 492 (1961); WIS JI—CIVIL 3020 ("The promises must be equally binding upon both parties, but it is not necessary that the value of the promises be equal."). However, a promise made out of the promisor's love and affection for the promisee will not alone suffice to provide sufficient consideration needed to enforce a contract. *See Grueneberg v. Briese*, 240 Wis. 426, 431, 3 N.W.2d 691 (1942) (love and affection is an insufficient consideration to support a contract for future performance); *Odell v. Smith*, 226 Wis. 556, 558-59, 277 N.W. 141 (1938) ("Natural love and affection or gratitude … as distinguished from valuable[] considerations, will not alone suffice to support the promise contained in a bill or note.").

¶21 In contrast, a gift requires no consideration. A gift may be enforceable as part of a contract if it is "completed," which occurs when the following elements are satisfied: "(1) Intention to give, (2) delivery, (3) end of dominion by donor, [and] (4) creation of dominion in donee." *Peters v. Peters Auto Sales, Inc.*, 37 Wis. 2d 346, 350, 155 N.W.2d 85 (1967). Applying these elements, a mere promise to make a gift of property cannot be enforced because actual delivery of the property is essential; a mere promise to deliver is not delivery and has not accomplished the dominion elements. *Odell*, 226 Wis. at 560 (citations omitted).

¶22 In determining whether the promises contained in the Agreement here provided sufficient consideration to constitute an enforceable contract, we must interpret the language of the agreement using the principles of contract

interpretation discussed above.[4]  *See* **Habel v. Estate of Capelli**, 2020 WI App 15, ¶¶12-15, 391 Wis. 2d 399, 941 N.W.2d 858.  In doing so, we conclude that the Agreement contains ambiguous language concerning the intent of the parties regarding the nature of Kuenzi's house-related promise.

¶23     Under one reasonable interpretation of the Agreement, Kuenzi's house-related promise could be a future gift to Kiersten rather than in consideration for Kiersten's promise to provide caretaking services.  This interpretation is supported by the following portions of the Agreement.  In the subsection referencing Kuenzi's house, the Agreement states that "this gift should be considered to be a death-time bequest" and "shall not be modified in the event that this Agreement is terminated for any reason prior to [Kuenzi's] death."  This language reasonably suggests that Kuenzi's house-related promise was not in consideration for Kiersten's promise to provide caretaking services, but as a future gift that would not be retracted should the Agreement be terminated.  In other words, even if Kiersten terminated the Agreement as allowed and ceased performing caretaking services, title to Kuenzi's house would still be transferred to Kiersten on Kuenzi's death.

¶24     The Agreement also states that "[Kiersten] is providing services to … [Kuenzi] as a matter of love and affection," and that "the total consideration … is given by [Kuenzi] to [Kiersten] as a matter of love and affection."  These

---

[4] The Agreement provides that the consideration for the parties' promises is "set forth herein."  The Agreement also contains an integration clause stating that the Agreement "represents the parties' entire understanding regarding the [A]greement's subject matter" and contains "[a]ll express or implied, oral or written agreements, covenants, representations, and warranties of the parties regarding the subject matter of this [A]greement."  These provisions unambiguously show that the parties intended to memorialize consideration in the Agreement.

clauses further support the interpretation that Kiersten was not expecting to receive title to Kuenzi's house in consideration for Kiersten's caretaking services. Rather, he promised to provide caretaking services because of the mutual love and affection shared by the parties. When all of these provisions of the Agreement are read together, they support a reasonable interpretation of the Agreement that Kuenzi's house-related promise was an incomplete gift and therefore is unenforceable.

¶25 But under a different reasonable interpretation of the Agreement, Kuenzi's house-related promise was in consideration for Kiersten's promise to provide caretaking services to Kuenzi. This interpretation is supported by the following language in the Agreement. A "whereas" clause of the Agreement states that "[Kuenzi] has requested and [Kiersten] has agreed to provide necessary services, for good and valuable consideration, as more particularly set forth herein." *See Levy v. Levy*, 130 Wis. 2d 523, 534, 388 N.W.2d 170 (1986) ("The recital or whereas clause of a contract may be examined to determine the intention of the parties."). This clause reasonably suggests that Kiersten promised to provide "necessary services" for Kuenzi in exchange for the "good and valuable consideration" described in the Agreement, which could include Kuenzi's house-related promise. This clause also suggests that Kiersten expected to receive more than just "love and affection" from Kuenzi in compensation for Kiersten's promise to provide caretaking services.

¶26 Other sections of the Agreement also support this interpretation. One section titled "Consideration" states that "[Kuenzi] intends to pay cash and other good and valuable consideration to [Kiersten] as computed in this Section

12

[of the Agreement]" and that the "consideration to be rendered by [Kuenzi] does not in any way represent fair market value for the intended services."[5]  In a following subsection of the Agreement, Kuenzi promised, in pertinent part, to give title to his house to Kiersten when Kuenzi died.  When read together, these provisions reasonably suggest that love and affection were not the only consideration being provided by each party, but that Kuenzi's house-related promise was intended to be the "other good and valuable consideration" provided for Kiersten's promised caretaking services, and that the consideration provided by Kuenzi exceeded the fair market value of Kiersten's caretaking services.  As discussed above, for there to be sufficient consideration in an agreement, "[t]he promises must be equally binding upon both parties, but it is not necessary that the value of the promises be equal."  WIS JI—CIVIL 3020.

¶27    Because the Agreement is susceptible to more than one reasonable interpretation with respect to the nature of Kuenzi's house-related promise, we conclude that the Agreement is ambiguous in that respect.  As a result, we must now determine whether the affidavits and other proof submitted by the parties show a genuine dispute of material fact as to the intent of the parties.  *See Energy Complexes*, 152 Wis. 2d at 466-67.  We conclude that they do show a genuine dispute.

¶28    To support its interpretation of the Agreement, the Estate points to a deposition in which Kiersten testified that he and Kuenzi initially intended for the $191,000 and the house together to constitute payment for Kiersten's services, but

---

[5] We do not refer to the section titled "Consideration" for interpretive purposes, but only for identification purposes, pursuant to the Agreement.

13

they ultimately agreed that the money and the house would be a "gift" and that Kiersten would not be getting paid for his caretaking services. This testimony would reasonably support a finding that Kiersten and Kuenzi did not intend for Kuenzi's house-related promise to provide consideration for Kiersten's promise to provide caretaking services.

¶29    To support his interpretation, Kiersten points to a letter that he received from Kuenzi's attorney after Kiersten provided his notice terminating the Agreement. In that letter, Kuenzi's attorney—who drafted the Agreement—acknowledged that Kiersten had been "substantially compensated" under the Agreement and asked Kiersten to "release any and all interest in Mr. Kuenzi's [house]." In itself, this reasonably supports a finding that Kuenzi treated his house-related promise as an enforceable promise, otherwise his attorney likely would have mentioned the unenforceability of this provision in this letter and would not have asked Kiersten to release his "interest" in Kuenzi's house. Additionally, Kiersten points to a previous draft of the Agreement that did not use the word "gift" and stated that Kiersten's "compensation" was a "reasonable fair market value for the services to be rendered by [Kiersten]." Kiersten contrasts this language with the final draft of the Agreement, which described Kuenzi's house-related promise as a "gift" and stated that the "consideration recited in this Agreement may not accurately reflect fair market value." These revisions reasonably suggest that the use of the word "gift" in the final draft of the Agreement may have been intended simply to denote the unequal value of the parties' mutual promises, rather than to establish that Kiersten expected to receive no compensation from Kuenzi in exchange for Kiersten's caretaking services. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 71 cmt. c (AM. L. INST. 1981) (even if

14

mutually exchanged promises contain an element of "gift" due to the unequal value of the promises, the mutual promises can still constitute consideration).

¶30    Based on this review of the extrinsic evidence submitted by the parties in support of their summary judgment motions, we conclude that, at this point in the proceedings, there is a genuine issue of material fact as to whether Kuenzi's house-related promise was an incomplete and unenforceable gift or whether it was offered in consideration for Kiersten's promise to provide caretaking services.  The resolution of this issue is dependent on this material factual determination.  We therefore conclude that summary judgment is not appropriate in favor of either party, and summary judgment in favor of the Estate was in error.  Accordingly, we remand for further proceedings consistent with this opinion.[6]

### III.  The Statute of Frauds

¶31    In the alternative, the Estate argues that, even if Kuenzi's house-related promise pursuant to the Agreement is supported by consideration, the Agreement is unenforceable under WIS. STAT. § 706.02, the statute of frauds for transactions affecting land.  This statute applies to any "transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity."  WIS. STAT. § 706.001(1).  We assume without

---

[6] Kiersten also argues that Kuenzi's house-related promise was supported by "moral consideration."  Moral consideration exists when a promisor has previously received "something of value" from the promisee that creates a "moral" obligation to repay. ***Onsrud v. Paulsen***, 219 Wis. 1, 4, 261 N.W. 541 (1935).  Here, "moral consideration" cannot support Kuenzi's promise because Kuenzi had not received "something of value" from Kiersten (such as caretaking services) at the time the Agreement was signed that might have created a moral obligation for Kuenzi to repay. *See **id.***

deciding that the house-related promise in the Agreement is a "transaction" within this definition.  Under § 706.02(1), such transactions must be "evidenced by a conveyance"—*i.e.*, a "written instrument"—that satisfies the following relevant requirements: (1) it "[i]dentifies the land"; (2) it "[i]s delivered"; and (3) if the grantor's death is a "parol limitation or condition" of delivery of the conveyance, then such condition is enforceable only if it arises in a lawsuit that was filed before the grantor's death.  Sec. 706.02(1)(b), (g); Wis. Stat. § 706.01(4).  We also assume without deciding that the Agreement meets the definition of a conveyance under § 706.02(1), *i.e.*, that it constitutes a written instrument for a transaction affecting an interest in land.  However, even with these assumptions that the statute of frauds applies to the Agreement, we reject the Estate's arguments that the Agreement violates the statute of frauds for the following reasons.

¶32    First, the Agreement sufficiently identifies the land at issue pursuant to Wis. Stat. § 706.02(1)(b).  The statute of frauds does not require a legal description of the land, but rather a description of the land "to a reasonable certainty."  *Prezioso v. Aerts*, 2014 WI App 126, ¶23, 358 Wis. 2d 714, 858 N.W.2d 386 (citation omitted).  In deciding whether a document conforms to the statute of frauds, we may consider the language of the entire document.  *Wadsworth v. Moe*, 53 Wis. 2d 620, 624, 193 N.W.2d 645 (1972).  Here, the Agreement provides that Kuenzi promises that "[Kiersten] will receive title to [Kuenzi's] residence in the Village of Clyman upon his death."  A separate portion of the Agreement clarifies that "[Kuenzi's] residence" is located at "719 Church Street, in the Village of Clyman, Dodge County, Wisconsin."  The street address of Kuenzi's house is sufficient to identify the land with reasonable certainty.  *See Seelen v. Arnette*, 584 B.R. 304, 310 (Bankr. W.D. Wis. 2018) (a street address may identify land with reasonable certainty).

¶33     Second, the Agreement was "delivered" pursuant to WIS. STAT. § 706.02(1)(g). The Estate's only argument regarding this requirement is that *Kuenzi's house* was never delivered to Kiersten because there was no quit claim deed prepared reserving a life estate in the house for Kuenzi or a transfer on death deed prepared. This argument fails because the statute of frauds requires that the "conveyance"—*i.e.*, the written instrument—be delivered, not the property itself. Sec. 706.02(1)(g). There is no dispute that the Agreement was delivered to Kiersten.

¶34     Third, the time limit under WIS. STAT. § 706.02(1)(g) does not apply here. Under this statute, if the grantor's death is "a parol limitation or condition" concerning the delivery of the conveyance, then that "limitation or condition" applies only if it arises in a lawsuit that is filed prior to the grantor's death. Sec. 706.02(1)(g).[7] The Estate argues that Kiersten's claim for title to Kuenzi's house is barred under this statute because Kiersten filed his claim after Kuenzi's death. This argument fails because the statute of frauds pertains only to the validity or enforceability of the parties' Agreement in the first place. *See Prezioso*, 358 Wis. 2d 714, ¶22. Here, Kuenzi's death was not a "parol" limitation or condition, *i.e.*, an "oral" or "unwritten" limitation or condition concerning the delivery of the Agreement. *Parol*, BLACK'S LAW DICTIONARY (12th ed. 2024).

---

[7] In relevant part, WIS. STAT. § 706.02(1)(g) provides:

> [A] conveyance delivered upon a parol limitation or condition shall be subject thereto only if the issue arises in an action or proceeding commenced within 5 years following the date of such conditional delivery; however, when death or survival of a grantor is made such a limiting or conditioning circumstance, the conveyance shall be subject thereto only if the issue arises in an action or proceeding commenced within such 5-year period and commenced prior to such death.

Instead, the condition that Kiersten would receive title to Kuenzi's house on Kuenzi's death was contained in the text of the Agreement. Because Kuenzi's death was not a "parol" limitation or condition concerning the delivery of the Agreement, the time limit in § 706.02(1)(g) does not apply to Kiersten's claim.

## CONCLUSION

¶35 For the foregoing reasons, we deny Kiersten's request that summary judgment be granted in his favor, reverse the circuit court's order granting summary judgment in favor of the Estate, and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.